THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* LILLIAN MARCUS, Appellant.

First Department, July 1, 1932.

*Samuel Gottlieb* of counsel [*Samuel Hart*, attorney], for the appellant.

*LeRoy Mandle* of counsel [*Thomas C. T. Crain*, District Attorney], for the respondent.

MARTIN, J. The information charges the defendant in two counts with petit larceny, in that she did steal a pair of gloves and a ring of the total value of two dollars and eighty-one cents, the property of James A. Hearn & Son, Inc.

The witness Helen G. Wall, a detective in the store of James A.

Hearn & Son, Inc., testified that on October 31, 1931, at about two P. M., she saw the defendant standing at the glove counter in that store; that the defendant was examining a pair of gloves and then folded them and placed them back on the counter and then walked over to a jewelry counter where there were several other customers and a saleswoman. There, the detective, pretending to be a customer, said she saw the defendant take a ring belonging to James A. Hearn & Son, Inc., place it upon her finger and then walk back to the glove counter, without paying for the ring.

As the defendant was returning to the glove counter, Detective Wall called another store detective to follow along with her. Both detectives testified that the defendant upon reaching the glove counter, took the pair of gloves she had previously folded and walked away without paying for them. While the defendant was walking from the store she placed one of the gloves over the hand upon which she was wearing the ring. When she stepped outside the store the defendant was apprehended by Miss Wall, the detective, and then brought back to the office of the store. The detectives testified that while the defendant was in the office of the store she admitted that she took the ring but claimed that she had paid for the gloves. Both detectives said that they saw the defendant take the gloves but one detective only said she saw the defendant take the ring.

While the defendant was being detained in the office of James A. Hearn & Son, Inc., Captain Closter asked her to sign a release and promised that he would permit her to go home if she did. It is said that this offer to release the defendant upon signing the statement was made pursuant to a custom established by James A. Hearn & Son, Inc., in the case of the arrest of a first offender. We are not told how the detectives knew the defendant was a first offender. The defendant refused to sign the release.

In the ordinary course, in such a case, we would expect the People to support the testimony of the detectives by that of the saleswomen. No such testimony was offered by the People in this case.

The *defendant* called Miss Sokol, the saleswoman at the glove counter. That witness could not recall seeing the defendant at the store on the day in question and was unable to corroborate the detectives in any respect. When asked if the defendant bought a pair of gloves she said: " Well, I don't remember whether she did or not."

The *defendant* also called as a witness Miss Knott, the saleswoman at the jewelry counter. That woman remembered seeing the defendant at her counter on the day of the alleged theft; she saw the defendant trying on rings and remembered the girl saying that she

lost a ring which the witness found later in the day and turned over to the section manager. The saleswoman said she saw the defendant at the store on the Monday following and told her where the ring could be recovered. The witness said she did not remember selling a ring to the defendant. She further testified that she did not see either of the detectives around her counter, stating " I was too busy around the counter." She said she did not see the defendant take a ring and repeated that " it was a very busy day." This witness also failed to corroborate the detectives in any detail.

At the trial the defendant maintained that the reason she did not sign the release was because it contained statements alleging that she committed the crime of stealing the gloves and ring, but upon cross-examination she said that she did not sign the statement because she did not believe that she would have been permitted to go free.

The appellant contends that she bought and paid for the ring and the gloves; that she waited for change and received the change from the saleswoman; that while she was trying on the ring she placed her old ring in her hand; that she dropped it and the ring rolled under the counter; that she reported the loss to the saleswoman and offered to leave her name and address and asked that if it were found it should be left at the lost and found department, and that she would call for it the following Monday. Appellant testified that the saleswoman said she was too busy at the time to look for the ring or to take the name and address but said if it were found it would be turned into the lost and found department and could be recovered there on Monday. The defendant said that after she had tried on the ring, paid for it and received her change of sixty-six cents, she threw away the receipts for both the ring and the gloves and started out of the store when she was arrested. While being taken back to the store the defendant asked the reason therefor, and was told that she had not paid for the things she was wearing and she said: " I paid for both articles out of my own money; if you take me back to the counters I'll identify the clerks, and I'll tell you of the experience that I had, namely, that of the clerk at the glove counter having measured my hand, and then at the ring counter about my having lost my ring." The detective said, " You'll tell all that to the Judge," and refused to take the defendant to either the ring or the glove counter. The whole matter could have been verified at that time when the sales·women could have readily recalled any incidents which it is said happened a few minutes before. For some reason the detectives who made the arrest were evidently not anxious to have the matter checked up at the time when it could have been fully explained

by defendant, or the theft established beyond doubt if the gloves and ring had been stolen.

The defendant's offer to go to the saleswomen before being taken to the office, to prove her purchases and to have them relate the incidents surrounding the purchases, would indicate that she had nothing to conceal and that she was ready and willing to prove she had paid for the merchandise. If she had not bought the ring and gloves the saleswomen could have said so and thus corroborated the detectives. The detectives not only refused to give her this opportunity but rushed her to the office where she refused to sign a release containing a confession of guilt, even if, by so doing she would gain her freedom.

In *People* v. *Marcus* (233 App. Div. 366) this court recently refused to convict on the uncorroborated testimony of detectives, because of circumstances which threw doubt on such testimony. Here we have a story told by two store detectives which is at least doubtful. It is contradicted by this defendant who shows that she bought a pair of gloves and a ring, where she bought them, and the prices she paid for same. It is remarkable, to say the least, that the saleswomen could not remember anything the detectives testified to and the fact that the detectives would not let this girl prove her story, a great part of which was shown to be true, raises a substantial doubt as to the truth of the detectives' stories.

The most important feature of this case is that neither of the saleswomen who defendant claims sold her the articles *denied* that she did so. If the incident happened as one of the store detectives testified, that she went to the counter and stood over this defendant while she was looking at rings, both the defendant and the detective would have been noticed by the saleswoman who undoubtedly knew the detective and would have been attracted by the incident. The saleswoman, Miss Knott, admitted that she saw this defendant trying on rings and that the girl told her she had lost a ring, and the saleswoman found the ring and it was returned to the defendant the following Monday. More remarkable is the fact that the detective who stood at the counter with the defendant watching her knew nothing about the lost ring incident. The saleswoman said she did not notice the defendant take or purchase a ring and she knew nothing about the matters which the detective testified to which are supposed to have occurred at her counter. Miss Sokol, the saleswoman at the glove counter, did not know that the defendant was charged with stealing a pair of gloves from her counter. She says she did not know whether she sold gloves to the defendant, or whether she measured defendant's hand for the gloves. The defendant says that the gloves cost one dollar and forty-seven cents,

that she gave Miss Sokol a one-dollar bill and two quarters and that she received three cents change.

We do not say we will not affirm a conviction obtained on the testimony of detectives. We do say, however, that when evidence presents such a grave doubt as is here shown or when an analysis thereof shows that it is incredible, we will not sustain a conviction no such evidence.

In addition, if good character amounts to anything, it should be given consideration in a case of this kind. Here, we have the case of a young woman of good character; never before convicted of any crime whatever, who has been employed as secretary in her present position for three years. She is certainly entitled to the benefit of the doubt as to her guilt which is the inevitable conclusion reached after reading the testimony in this case.

In *People* v. *Conrow* (200 N. Y. 356) the Court of Appeals held that when a person who is charged with crime has previously borne a good character, that fact should in every case be considered by the jury with the other evidence in determining whether he is guilty or innocent and that the improbability of a person of such character being guilty may of itself be sufficient in any case to raise a reasonable doubt of guilt. At page 361 the court said: " In *People* v. *Bonier* (179 N. Y. 315) this court quoted from the opinions in three important prior cases in this court involving the subject of the previous good character of a person accused of crime, namely, *Cancemi* v. *People* (16 N. Y. 501, 506); *Remsen* v. *People* (43 N. Y. 6); *People* v. *Elliott* (163 N. Y. 11), and then said: ' It is, therefore, the law that evidence of good character may of itself create a reasonable doubt, when without it none would exist, and that upon the request of the accused the jury should be told that such evidence, in the exercise of their sound judgment, may be sufficient to warrant an acquittal, even if the rest of the evidence should otherwise appear conclusive.' * * *

" The defendant was entitled to have the jury charged substantially as requested by his counsel, that in the exercise of sound judgment they might give the defendant the benefit of the presumption of innocence that arises from good character, no matter how conclusive the other testimony appeared to be."

The judgment of conviction should be reversed and a new trial ordered.

McAvoy and Townley, JJ., concur; Finch, P. J., and O'Malley, JJ., dissent and vote for affirmance.

O'Malley, J. (dissenting). The defendant was found guilty by a unanimous decision of three justices of the Court of Special

Sessions, each experienced in the trial of " shoplifting " cases. We may safely assume that these justices would hesitate to convict in a case of this character unless the evidence clearly satisfied them of the defendant's guilt. They heard the testimony from the mouths of the witnesses and were thus afforded opportunity to observe the demeanor of each and his or her manner of testifying. It was for these triers of the facts to pass upon their credibility and not for an appellate court. (*Boyd* v. *Boyd*, 252 N. Y. 422.)

The prevailing opinion censures the store detectives for not having returned with the defendant to the glove and ring counters to have her alleged statement that she had purchased the articles corroborated by the saleswomen. The detectives had seen what had transpired and, if their testimony was to be believed, *knew as a fact* that the defendant had not purchased the articles. In these circumstances it would have been a mere futile gesture to have complied with her request. Moreover, it is to be noted that the defendant when apprehended was unable to produce a sales slip for either article.

I attach little importance to the fact that the saleswomen, who were called as witnesses by the defendant, were unable to say whether they remembered having sold the articles to the defendant. They were busily engaged waiting on other customers at the time in question. The fact that each was unable to recall having made a sale to the defendant tends to support the People's case. If the defendant had made a purchase it is quite likely that each of these saleswomen would have had some recollection of the sale.

In these circumstances I vote for affirmance, as I am of opinion that the defendant's guilt was clearly shown and that the justices of Special Sessions should not be again called upon to retry a case where in all probability the result will be the same as on the first trial.

FINCH, P. J., concurs.

Judgment reversed and a new trial ordered.