LINCOLN STORES, INC. *vs.* DOUGLAS J. GRANT & others.

Norfolk. April 11, 1941. — June 25, 1941.

Present: FIELD, C.J., QUA, DOLAN, & COX, JJ.

*Trust,* Constructive. *Corporation,* Officers and agents. *Fiduciary.*

Conduct of directors and an employee of a corporation in the acquiring, by use of information not obtained through their connection with it, of certain shares of another corporation giving them control of a store which was not essential to their corporation, which their corporation had no thought of acquiring and in which it had no interest, did not make them constructive trustees of the shares for their corporation although their operation of the store thereafter was in competition with the business of their corporation and was in violation of their duty to it.

BILL IN EQUITY, filed in the Superior Court on August 1, 1939.

The decrees appealed from were entered by order of *Morton, J.*

*E. S. Farmer,* for the plaintiff.

*A. E. Whittemore,* (*E. Williamson* with him,) for the individual defendants.

Cox, J. This bill in equity, filed August 1, 1939, originally sought to enjoin the defendants Grant, Martin and Haley from operating a store similar to those of the plaintiff, and from making use of information acquired by them while they were officers and employees of it. An accounting also was sought for the purpose of determining what damage the

plaintiff had sustained by reason of the alleged unfaithful acts of said three defendants. Thereafter, by amendment, the bill sought to have a constructive trust declared of the shares owned by Grant, Martin and Haley of the capital stock of the Connecticut corporation that was operating a store in alleged competition with one owned and operated by the plaintiff. Subsequently, the wife of the defendant Martin was joined as a defendant. The suit was referred to a master, whose report was confirmed by interlocutory decree, and a final decree was entered which, among other things, ordered Grant, Martin and Haley to pay the plaintiff damages and dismissed the bill as against Mrs. Martin. The plaintiff appealed from these decrees. The vital question for determination is whether, upon the facts found, it should have been decreed, as it was not, that a constructive trust be established.

The plaintiff, hereinafter called the company, for several years had operated stores in fourteen cities, including one in Norwich, Connecticut. Grant was a director of the company, and for some time prior to June 7, 1937, was manager of its store in Rochester, New York, and supervisor of two other stores in that State. Martin also was a director, and, until June 7, 1937, was the general manager of all of the company's stores. Haley entered the employ of the company about 1927. From 1932 he was a buyer, and on May 19, 1937, he resigned this position. The company store in Norwich was opened in 1927. It was in "a 100% location, right in the center of the city," was conspicuously successful, and, as early as 1927, the company's officers felt that it was handicapped by lack of selling space. The possibility of getting more space was frequently discussed. The company had a lease that expired in 1943. It contained an option, expiring April 1, 1933, to lease two other stores in the same building. In 1932, four of the officers, including Grant and Martin, discussed the advisability of exercising the option by leasing one of the two stores, but it was concluded that to do so would involve more expense than the return in sales would warrant, and the option was not exercised. Thereafter, the company's officers did not again

consider the acquisition of more space in Norwich until 1938.

There was an "old-time" department store in Norwich that had been operated since about 1880 by the Reid & Hughes Company, a Connecticut corporation. It was on the same side of the street as the company's store, but afforded little competition to it.

In April, 1937, a real estate broker in New York informed Grant that the capital stock of the Reid & Hughes store in Norwich was for sale. Grant immediately sent this information with the proposed terms of sale to Martin. Within a few days the broker telephoned Haley, describing the offer. It is unnecessary to recite in detail the conduct of Grant, Martin and Haley up to May 22, 1937, when the purchase of the Reid & Hughes stock was completed. It is enough to say that on April 27 Grant, Martin and Haley agreed to go forward with its purchase. Haley was to resign from the company's employ and go to Norwich to take charge of the Reid & Hughes store. Grant and Martin desired to continue in the company's employ and planned to conceal their interests in the Reid & Hughes store, to continue in the company's employ for an indefinite period, and to give such assistance and direction in the management of the Reid & Hughes store as they could without letting their interests become known to the company. The three had various conferences in New York, Massachusetts and Connecticut directly relating to their proposed purchase, and charged their travelling expenses to the company. In the meantime, Grant availed himself of certain information that he obtained from confidential records of the company, which he used in determining the amount of inventory and capital that would be required in similar departments in the Reid & Hughes store if it were purchased. The three intended to utilize the knowledge and experience they had acquired in the company's employ in merchandising goods similar to those sold in the company's store in Norwich.

On June 7, Grant and Martin attended a meeting of the company's directors at which they were both discharged from their positions. Grant denied that he was connected

with the Reid & Hughes store, and Martin said that he would not deny that he was. About June 19, 1937, their resignations as directors were requested, but they refused to resign and continued as directors until March, 1938, although after June 7 they attended no meetings and received no information as directors other than notices of meetings.

On April 3, 1939, two hundred shares of the stock of the Reid & Hughes Company stood in the name of Haley and Grace A. Haley, two hundred shares in the name of Grant's wife, two hundred shares in the name of Martin's wife, and five shares each in the names of Grant, Martin and Haley. No certificates have since been issued. The Reid & Hughes Company, a Connecticut corporation, is not a party, nor is Grace A. Haley or Mrs. Grant, and the certificates of stock are not in the custody of the court.

The master found that Grant and Martin, as directors of the company, were under a duty not to engage in competition with the company and not to acquire interests which conflicted with its interests; that in the purchase of the Reid & Hughes stock and the conduct of the store in competition with the company's store, they violated their duty, and that Haley, who participated in their acts, also violated his duty as an employee. He found that the company had sustained damages in the loss of profits that it otherwise would have earned had it not been for this competition, and also that it should be reimbursed for the compensation paid Grant, Martin and Haley from April 27 until they left the company's employ, together with the travel expenses that they had charged to the company while they were forming and executing their plan to acquire the Reid & Hughes stock.

If we assume, without deciding, that all necessary parties are before the court, nevertheless, we are of opinion, on the facts found, that the establishment of a constructive trust, by the terms of which Grant, Martin and Haley would be declared trustees of the stock of the Reid & Hughes Company that was acquired, is not warranted. All these defendants were employees of the company, and two were directors. In the circumstances disclosed, the finding of

the master that Haley, who was not a director, participated in the acts of the other two and also violated his own duty as an employee was warranted. Directors of corporations have often been said to be trustees. In any event, they occupy a fiduciary relation toward the corporation, and have a duty of reasonably protecting and conserving its interests. *Beaudette* v. *Graham,* 267 Mass. 7, 12. *Brown* v. *Little, Brown & Co. (Inc.)* 269 Mass. 102, 117. It does not appear that any duty whatever rested upon any of these defendants to acquire the Reid & Hughes stock directly for the company so that there was any breach of a specific, as distinguished from a general, duty in acquiring it for themselves. In this connection it has been said that the duty is only coextensive with the trust so that, in general, the legal restrictions that rest upon officers in their acquisitions are generally limited to property in which the corporation has an interest already existing, or in which it has an expectancy growing out of an existing right, or to cases where the officers' interference will, in some degree, prevent or hinder the corporation in effecting the purposes of its creation. *Lagarde* v. *Anniston Lime & Stone Co.* 126 Ala. 496, 502. *Tierney* v. *United Pocahontas Coal Co.* 85 W. Va. 545, 564. It has been said that a director cannot be allowed to profit personally by acquiring property that he knows the corporation will need or intends to acquire, *Golden Rod Mining Co.* v. *Bukvich,* 108 Mont. 569, and that this interest, actual or in expectancy, must have existed while the person involved was a director or officer. *Colorado & Utah Coal Co.* v. *Harris,* 97 Colo. 309. *Guth* v. *Loft, Inc.* 5 Atl. [2d] 503, 510, 511.[1] See *Trice* v. *Comstock,* 121 Fed. 620, 626–627.

From an examination of the facts in the case at bar, we think it follows that the Reid & Hughes store was not essential to the company, and that it was something in which the company had no interest or expectancy. For that matter, it appears that it was being operated many years before the plaintiff company opened its store in Norwich.

---

[1] The official Delaware citation was not available at the time of publication of this volume. — REPORTER.

Its acquisition by the company had never been considered. It would seem obvious that practical business considerations would be against its acquisition. The company had no interest in or thought of acquiring it when the opportunity came to these defendants to purchase the stock.

Was there a connection between the general scope of the duties of the defendants, considered collectively, and the purchase of the stock, so that it was improper for them to purchase it themselves? We are of opinion, on the facts found, that there was not. Not only had the company declined to exercise its option and acquire additional floor space for its store before that option expired in 1933, but at no time thereafter did its officers even consider the acquisition of more space in Norwich until 1938, which was some time after the three defendants acquired the Reid & Hughes stock. If we put to one side for the moment the facts surrounding the operation of the store by the three defendants after its purchase, we have, in effect, the case of the acquisition of a store that was ninety feet away from the company's store in which a going business was being conducted. The absence of any interest, express or implied, on the part of the company in the acquisition of this store or, for that matter, of any other space, is significant. In the acquisition of a store, as distinguished from its operation, we are of opinion that the three defendants violated no duty. The case at bar is not one in which the Reid & Hughes stock was acquired because the three defendants had in mind that it was desirable, if not necessary, for the plaintiff's business. No purpose is disclosed to attempt to dispose of the stock to the company at a profit. On the contrary, it would seem that the three defendants conceived the idea of going into business on their own account by the purchase of stock which would give them control of a going concern. They availed themselves of no information to the effect that the business was desired or needed by the company. It does not appear that the officers of the company had ever entertained any thought that it was. The defendants did, however, avail

themselves of information as to methods of conducting the business that was to be acquired. They made use of this information, and, as the master found, to the damage of the company.

Directors or officers of a corporation are not, by reason of the fiduciary relationship they bear toward the corporation, necessarily precluded from entering into an independent business in competition with it, but, in doing so, they must act in good faith. *Red Top Cab Co.* v. *Hanchett*, 48 Fed. (2d) 236, 238, and cases cited. *Golden Rod Mining Co.* v. *Bukvich*, 108 Mont. 569, 576, and cases cited.

The case at bar is distinguishable from *Essex Trust Co.* v. *Enwright*, 214 Mass. 507. It is true that in that case the defendant contended that he was not within the rule as to fiduciaries because the duty of securing the lease that he obtained was not entrusted by his employer to him. But, it was pointed out, that in obtaining the lease, he had made use of information that came to him in his employment to the detriment of his employer. It is true that in the case at bar the defendants made use of information that they had obtained while in the employ of the company. But it seems that that information was used not for the purpose of acquiring the Reid & Hughes stock as something that would be valuable to the company, but rather for the purpose of operating the store after it had been acquired. And for the wrongful use of this information, and for the wrongful conduct of the defendants, in so far as it related to competition with the company, the latter has been compensated in damages. For similar reasons the case at bar is distinguishable from *American Circular Loom Co.* v. *Wilson*, 198 Mass. 182, 206, 207, *H. C. Girard Co.* v. *Lamoureux*, 227 Mass. 277, *Horn Pond Ice Co.* v. *Pearson*, 267 Mass. 256, *Cann* v. *Barry*, 293 Mass. 313, 316, 317, and *Nelson* v. *Bailey*, 303 Mass. 522, 523, 526, 527. See *Barden Cream & Milk Co.* v. *Mooney*, 305 Mass. 545.

It is true that the company, by its amended bill, evinces a desire, in effect, to take the Reid & Hughes stock, and it is assumed that it would expect to reimburse the three defendants to the extent to which they would be entitled. *Cann*

*v. Barry,* 293 Mass. 313, 317. But we think it follows from what has been said that the facts found do not warrant the establishment of a constructive trust as to the capital stock of the Reid & Hughes Company. The conduct of the three defendants in acquiring the stock was, in a sense, to the end that the company was damaged as a result of the wrongful use of information obtained by them, while in the service of the company, whereby they transformed a noncompetitive store into one that was in active competition. But we think the wrong arose, not out of the acquisition of the store, but in the operation of the business.

The company's contention in this court is that "in addition to the relief already afforded by the final decree," it is entitled to the imposition of a constructive trust in its favor on the shares of the Reid & Hughes Company stock. In the circumstances, it is unnecessary to consider whether, apart from the question of the imposition of a constructive trust, the plaintiff is entitled to anything more than it obtained by the final decree.

The company concedes that its three objections to the master's report are of importance only if a constructive trust is established.

> *Interlocutory decree affirmed.*
> *Final decree affirmed with costs.*