RAINES *v.* TONEY.

5-1335                                          313 S. W. 2d 802

Opinion delivered May 5, 1958.

[Rehearing denied July 1, 1958]

McMillen, Teague & Coates; Robert S. Lindsey, and Edward L. Wright, for appellant.

Gannaway & Gannaway; Wood & Smith and Patten & Brown, for appellee.

E. J. BALL, Special Justice. This appeal involves a derivative action brought by certain shareholders of. E. E. Raines Company seeking to recover damages for injuries sustained by the corporation against Appellants Sam P. Raines, James M. Coates, Sr., James M. Coates, Jr., and Gordon Y. Price; Commercial Union Assurance Co., Ltd., Commercial Union Fire Insurance Company of New York, The Palatine Insurance Co., Ltd. and Union Assurance Society, Ltd., herein referred to as Commercial Union Group; and Great American Insurance Company, Great American Indemnity Company and Rochester American Insurance Company, herein referred to as Great American Group.

E. E. Raines Company was incorporated under the laws of the State of Arkansas as a general insurance agency on November 7, 1931, under the name of Coates & Raines, Inc., with its principal place of business at 410 Spring Street, Little Rock, Arkansas. Its official name was changed to E. E. Raines Company on January 5, 1944; and it was dissolved on February 7, 1956, after the present suit had been instituted.

Appellant Sam P. Raines was at all times since 1950 a member of the Board of Directors and at all times since 1944 a Vice-President of E. E. Raines Company. E. E. Raines, deceased, was at all times prior to his death on July 30, 1952, President and a Director of E. E. Raines Company. Sam P. Raines assumed full direction and control of the corporate affairs following the illness of E. E. Raines in January of 1952, and held office until the dissolution of the corporation on February 7, 1956.

Prior to October 1, 1952, Coates & Coates was a partnership composed of Appellants, James M. Coates, Sr., Gordon Y. Price and James M. Coates, Jr., and was engaged in the general insurance agency business. James M. Coates, Sr., the senior partner in Coates & Coates, was for many years prior to 1936 an employee of E. E. Raines Company.

Coates & Raines, a partnership, was organized on or about October 1, 1952, and is engaged in the general insurance agency business. It is composed of Appellants, James M. Coates, Sr., Sam P. Raines, Gordon Y. Price and James M. Coates, Jr. It took over the representation of the Commercial Union Group and the Great American Group on October 1, 1952.

Prior to October 1, 1952, E. E. Raines Company was one of the most successful fire and casualty general insurance agencies in Arkansas and had represented for many years the Commercial Union Group and the Great American Group. The following schedule reflects the volume of business done by E. E. Raines Company for the five years prior to 1952 from all representations and from the Great American Group and the Commercial Union Group:

| YEAR | Gross Premiums From All Representation | Gross Premiums From Great American Representation | Gross Premiums From Commercial Group Representation | Total Premiums From Great American and Commercial |
|------|------|------|------|------|
| 1951 | $1,477,825.65 | $416,395.19 | $205,516.91 | $621,912.10 |
| 1950 | 1,491,888.59 | 413,959.47 | 221,253.57 | 635,212.99 |
| 1949 | 1,609,705.47 | 449,004.34 | 241,420.87 | 690,425.21 |
| 1948 | 1,658,891.65 | 426,699.78 | 256,554.82 | 683,254.60 |
| 1947 | 1,718,026.61 | 455,178.50 | 261,120.62 | 716,299.12 |

TOTAL................................................................$3,347,104.02

E. E. Raines Company maintained "agency plants" in various cities throughout Arkansas as its outlet for the sale of fire and casualty insurance. Out of the gross premiums collected from the sale of such insurance it retained 10 per cent thereof as its profit and compensation. From 1947 through 1951, its five year average annual

gross premiums from the Commercial Union Group and the Great American Group were $669,420.80 of which E. E. Raines Company retained an average of $66,942.08 as its profit and compensation.

At the beginning of 1952, there were 500 shares of stock of E. E. Raines Company outstanding, and it was owned as follows:

| | | |
|---|---|---|
| 1. E. E. Raines | 225 | shares |
| 2. Alice M. Coates | 175 | shares |
| 3. Sam P. Raines | 37 | shares |
| 4. Edna J. Williams | 12 | shares |
| 5. Mary R. Toney, Trustee | 50 | shares |
| 6. Others | 1 | share |
| TOTAL | 500 | shares |

Mrs. Alice M. Coates is the Mother of Appellant, James M. Coates, Sr., and her shares in E. E. Raines Company passed to her at the death of her husband many years ago. She had not at any time participated in the management of E. E. Raines Company. During the period in question the Board of Directors of E. E. Raines Company consisted of E. E. Raines, Sam P. Raines, John E. Coates, Jr., W. R. Perry and J. D. Toney.

It appears that in January of 1952, E. E. Raines, President of E. E. Raines Company, became disabled, and on January 23, 1952, Sam P. Raines was granted authority to write checks, a power and duty that he apparently had not held before. It further appears that on June 4, 1952, at an informal and unofficial meeting of the shareholders of E. E. Raines Company held in an attorney's office, Sam P. Raines proposed that he be retained as general manager of the corporation at an annual compensation of $25,000, and demanded an immediate acceptance thereof. However, by mutual agreement, action on the proposal was deferred until June 23, 1952. It also appears that prior to the June 4th meeting and prior to June 23, 1952, Sam P. Raines, while acting as Vice-President, General Manager and as a member of the Board of Directors of E. E. Raines Company,

solicited in his own behalf and on behalf of Coates & Raines, a new partnership to be formed by Sam P. Raines and James M. Coates, Sr., the representation of the Commercial Union Group and the Great American Group.

In this respect, the evidence reflects that as early as March or April of 1952, Sam P. Raines had made trips to the headquarters of the Great American Group and Commercial Union Group in New York, and had negotiated for the representation of these two groups. Following the month of May, 1952, considerable correspondence marked "Personal and Confidential" took place between Sam P. Raines and Mr. Florence, a Vice-President of the Commercial Union Group. The essence of this correspondence was that when Sam P. Raines resigned and left the employment of E. E. Raines Company, the Commercial Union Group would cancel the general agency agreement with E. E. Raines Company and give it to Coates & Raines, a partnership to be formed by Sam P. Raines and James M. Coates, Sr. On June 24, 1952, Sam P. Raines notified Mr. Florence that he had made his "final move" and that the way is "clear for you to send" out your letters. The general agency contracts between E. E. Raines Company and the Commercial Union Group provided for a 90 day notice of intentions to cancel, and, accordingly, Mr. Florence caused such notices to be given E. E. Raines Company terminating the general agency contracts effective October 1, 1952. On June 23, 1952, Sam P. Raines sent out a notice to shareholders of E. E. Raines Company stating that, "I am giving notice today to all stockholders of E. E. Raines Company that I will resign effective October 1, 1952. My future plans are such that cannot be disclosed at this time." The record fails to reflect that Sam P. Raines ever resigned. It does disclose that he remained the Vice-President and a director until the corporation was dissolved on February 7, 1956.

The evidence further reflects that on June 10, 1952, Mr. James M. Coates, Sr., visited Mr. Florence in New York pertaining to the representation of the Commer-

cial Union Group, and Mr. Florence made the following memorandum of the interview:

Mr. James Coates visited my office on Tuesday, June 10th and explained the situation as it exists in view of Mr. E. E. Raines' condition.

The stock of this corporation is owned as follows:

Mr. E. E. Raines........................................................45%
Mrs. Coates................................................................35%
Mrs. Toney................................................................10%
Mr. Sam Raines........................................................ 7%
Probably E. E. Raines' other daughter........... 3%

Mr. Sam Raines met with the stockholders but no arrangement could be worked out to his satisfaction. He is resigning as of September 30, 1952.

Mr. Sam Raines and Mr. James Coates intend to open a new general agency under the name of Coates & Raines.

They expect to dissolve the E. E. Raines Corporation and dispose of its physical assets. They expect to accomplish this by voting 52 per cent of the stock, (Mrs. Coates' 35 per cent, Mr. Sam Raines' 7 per cent and Mrs. Toney's 10 per cent). In the event that Mrs. Toney does not vote with them for the dissolution they expect the corporation to be dissolved automatically for lack of companies.

The stock of the corporation of Coates & Raines will be owned as follows:

James Coates............................................................35%
Sam Raines................................................................35%
James Coates, Jr.....................................................15%
Gordon Price.............................................................15%

Mr. Coons and I explained to Mr. Coates that we were not interested in the dissolution of E. E. Raines Company and we explained our position. That Mr. Miller had committed himself to Mr. Sam Raines to the effect that if he left E. E. Raines Company we would give him the representation of our companies. That this was a commit-

ment made some months back. That when Mr. Sam Raines wrote us to the effect that he had resigned we would serve notice of cancellation on E. E. Raines Company for all of our companies so that they would be available for Mr. Sam Raines 90 days thereafter.

I advised Mr. Coates that we planned to give Mr. Sam Raines only the CUA, CUNY and PALATINE. He was of the opinion that Mr. Sam Raines would prefer to keep the UNION for the time being. Mr. Coons is of the opinion that our position is a safe one and he will proceed to send the cancellation notices as soon as we are advised officially by Mr. Sam Raines of his resignation.

Insofar as that part of the business of E. E. Raines Company pertaining to the Commercial Union Group, it appears that E. E. Raines Company owned the "agency plant." In this respect, on September 8, 1952, Mr. Florence wrote to Sam P. Raines the following:

Maybe you can enlighten me about a situation that is somewhat perplexing. What is our status insofar as the E. E. Raines office is concerned? We do not own the agency plant, so ordinarily in case of cancellation of contract we would ask the General Agency to cancel out the agency plant and return the supplies. If you have come to an amicable agreement with the Raines office and have their permission to take over their agents there would be no problem. If, however, no agreement has been effected between you and the Raines office the situation is somewhat awkward. It would seem to me that in this latter contingency it would be necessary for you to renegotiate with each of our agents individually. Technically it would be necessary for E. E. Raines to close them and you to appoint them. I hope this won't be necessary because the supplies in the agents hands could be used to report through Coates & Raines since there is no E. E. Raines Company imprint on them.

As to the announcement of appointment, it seems to me that your letter to the agents would serve as an announcement for all companies, if we would advise the Bureau of the Appointments for our Group.

This situation is complicated by the fact that we do not own the agency plant and can't take any action that might jeopardize the position of E. E. Raines Company in the offices of their agents.

Please reply air mail as the date October 1st is rapidly approaching.

While James M. Coates, Sr. was in New York in June of 1952, he solicited the representation from the Great American Group on behalf of the new partnership, Coates & Raines. Sam P. Raines had also solicited the representation on behalf of the new partnership prior to June of 1952, and as early in July or August, the Great American Group agreed to give the new partnership, Coates & Raines, the representation. The agency contracts between the Great American Group and E. E. Raines Company provided for a cancellation notice, and when Sam P. Raines notified the Great American Group that he intended to resign his position with E. E. Raines Company as of October 1, 1952, the Great American Group gave notice in accordance with the terms of the contracts that the agency agreements with E. E. Raines Company were to be terminated on October 1, 1952. Whether the Great American Group or E. E. Raines Company owned the ''agency plants'' under the agency agreements is not clear.

Both the Great American Group and the Commercial Union Group gave the representations to Coates & Raines as of October 1, 1952, and, it appears, that on that date Coates & Raines took over the ''agency plants,'' leaving E. E. Raines Company wholly without representations and without ''agency plants'' through which to market any insurance business in the State.

On July 6, 1953, a meeting of the board of directors of E. E. Raines Company was held. At that meeting a resolution was offered providing for the employment of legal counsel to investigate the cause for the cancellation of the general agency contracts with E. E. Raines Company by the various insurance companies, and proceed to recover any damages that the corporation may be

entitled. This motion failed to receive a second. Sam P. Raines was present at this meeting as an officer and a director, and it appears that he made no comments whatever concerning the matter. Subsequently a group of the shareholders representing about 40 per cent of the outstanding stock of E. E. Raines Company instituted a derivative action against the appellants to recover damages on behalf of the corporation for the loss of the business. The Trial Court found for the corporation on the derivative action and awarded judgment in the sum of $210,312.50 against the appellants.

The foregoing facts compel a conclusion that the conduct of Sam P. Raines as an officer and a director of E. E. Raines Company falls below the standard required of corporate fiduciaries. In the instant case, the gravamen of the cause of action against Sam P. Raines is to be found in the violation of his fiduciary obligations while serving E. E. Raines Company. He failed in his obligation to retain and continue to hold and to protect important business interests for the benefit of E. E. Raines Company consisting of the general agency contracts, among others, with the Commercial Union Group and the Great American Group. He failed in his obligation to retain and continue to hold and to protect the "agency plants" situated in the various towns and cities throughout Arkansas through which E. E. Raines Company marketed the insurance. Moreover, he violated his duty by acquiring for himself and others these same business connections and "agency plants." All of this was to the detriment of those relying and entitled to rely upon him as the corporate fiduciary, and resulted in the complete destruction of E. E. Raines Company.

The law imposes a high standard of conduct upon an officer or director of a corporation, predicated upon the fact that he has voluntarily accepted a position of trust and has assumed the control of property of others. Even a higher standard of duty rested upon Sam P. Raines. He was the vice-president and director of E. E. Raines Company, but he was the manager as well. *Minhard* v. *Salmon,* 249 N. Y. 458, 164 N. E. 545. Such

a person occupies a fiduciary relation to his corporation and "may not acquire, in opposition to his corporation, property in which the corporation has an interest or tangible expectancy or which is essential to its existence." *Blaustein* v. *Pan American Petroleum and Transportation Co.*, 236 App. Div. 97, 31 N. Y. S. 2d 934, 962; *Lincoln Stores, Inc.* v. *Grant*, 309 Mass. 417, 34 N. E. 2d 704, 707. See also 3 *Fletcher Cyclopedia Corporations* (perm. ed.) Sections 838,861.1 and 1102. This doctrine of "corporate opportunity" is but one phase of the rule of undivided duty and loyalty on the part of corporate fiduciaries. It does not preclude a corporate fiduciary from engaging in a distinct enterprise of the same general class of business as that which his corporation is engaged, so long as he acts in good faith. *Lincoln Stores, Inc.* v. *Grant, supra; Bump Pump Co.* v. *Waukesha Foundry Co.*, 238 Wis. 643, 300 N. W. 500; *Lutherland, Inc.* v. *Dahlen*, 357 Pa. 143, 53 A. 2d 143; 3 *Fletcher Cyclopedia Corporations* (perm. ed.), *supra*. Certainly Sam P. Raines as a corporate fiduciary and a manager cannot be said to enter in good faith into a competing enterprise which crippled, injured and destroyed the business of his corporation which he was then serving, and at the same time terminate the property interests of his corporation and appropriate them to his own use through his competing enterprise. *Hall* v. *Dekker*, 45 Cal. App. 2d 783, 115 P. 2d 15; *Coleman* v. *Hanger*, 210 Ky. 309, 275 S. W. 784; *Bump Pump Co.* v. *Waukesha Foundry Co.*, *supra*.

It is clear that Sam P. Raines occupied a fiduciary position. He owed a duty to E. E. Raines Company to retain and protect and develop the then existing business opportunities his corporation had with the appellant insurance companies. He owed a duty to retain, protect and develop the then existing "agency plants" situated throughout the State of Arkansas and owned by his corporation which were essential to its existence. Moreover, he owed the duty not to separate his personal interest from that of his corporation with references to these property interests while serving or even after he had severed his employment with E. E. Raines Company. He owed a duty not to do anything that

might result in injury to E. E. Raines Company or ''deprive it of the profit or advantage which his skill, knowledge and ability might personally bring to it or enable it to realize the reasonable exercise of its power.'' *Pepper* v. *Litton,* 308 U. S. 295, 311, 60 S. Ct. 238, 84 L. Ed. 281; *Guth* v. *Loft, Inc.,* 23 Del. Ch. 255, 5 A. 2d 503, 512. See *Central Ry. Signal Co.* v. *Longden,* 7th Cir., 194 F. 2d 310, 313; 3 *Fletcher Cyclopedia Corporations, supra,* at Section 850.

Sam P. Raines insists that he resigned his employment with E. E. Raines Company when he sent to several of its stockholders a letter dated June 23, 1952, advising them that he would resign on October 1, 1952, thereby terminating this fiduciary duty to his corporation. The record fails to disclose such termination. He continued to serve his corporation for more than three years after the October 1, 1952, deadline. Substantially all of the documents terminating the general agency contracts with the appellant insurance companies were executed by him. Finally, he executed the Certificate of Dissolution of E. E. Raines Company on February 7, 1956. Even if he had effectively resigned his employment, as he contends, his fiduciary duty to his corporation did not then terminate. His duty to be loyal and faithful to E. E. Raines Company did not cease either on June 23, 1952, or on October 1, 1952. This duty cannot be renounced at will by the termination of employment. ''It is as sacred and inviolable after as before the expiration of its terms.'' *Trice* v. *Comstock,* 8th Cir., 121 F. 620. It is, however, a common occurrence for corporate fiduciaries to resign and form a competing enterprise. Unless restricted by contract, this may be done with complete immunity because freedom of employment and encouragement of competition generally dictate that such persons can leave their corporation at any time and go into a competing business. They cannot while still corporate fiduciaries set up a competitive enterprise. *Witmer* v. *Arkansas Dailies, Inc.,* 202 Ark. 740, 151 S. W. 2d 971, or resign and take with them the key personnel of their corporations for the purposes of operating their own competitive enterprise. *Duane Jones Company,*

*Inc.* v. *Burke,* 306 N. Y. 172, 117 N. E. 2d 237. But they can, while still employed, notify their corporation's customers of their intention to resign and subsequently go into business for themselves, and accept business from them when offered to them. *Aetna Building Maintenance Co.* v. *West,* 39 Cal. 2d 198, 246 P. 2d 11. But they can use in their own enterprise the experience and knowledge they gained while working for their corporation. *Witmer* v. *Arkansas Dailies, Inc., supra.* They can solicit the customers of their former corporation for business unless the customer list is itself confidential. *Continental Car-Na-Vor Corporation* v. *Mosley,* 24 Cal. 2d 104, 148 P. 2d 9. In the instant case, Sam P. Raines negotiated for and procured for his own use the general agency contracts with the appellant insurance companies while serving his corporation. He also negotiated for and procured for his own use the "agency plants" belonging to his corporation while serving as a corporate fiduciary. His action in these respects was infected with secrecy and silence. His fiduciary position obligated him not to separate his personal interest from that of E. E. Raines Company without full and complete disclosure. The fact that Sam P. Raines was during the time in control of E. E. Raines Company with the power of direction charged him with even a greater duty of disclosure. He was obligated to disclose fully all of the facts and circumstances surrounding his negotiations and agreements with the appellant insurance companies; and he was obligated to disclose fully all of the facts and circumstances surrounding his negotiation and acquisition of E. E. Raines Company's "agency plants." This greater obligation was owed because both of these property interests were highly essential to the successful and continued existence of E. E. Raines Company. It may be that in failing to make such a disclosure, Sam P. Raines was not guilty of bad faith, but he failed to realize and discharge his duties as a corporate fiduciary, and he wrongfully assumed that as such a fiduciary he had a right to take the property or the tangible expectancy for himself without informing those whom he was serving and who relied and had a right to rely upon him. This he was not permitted to do. "If dual interests are

to be served, the disclosure to be effective must lay bare the truth, without ambiguity or reservation, in all of its stark significance.'' *Wendt* v. *Fischer,* 243 N. Y. 439, 154 N. E. 303, 304. The record reflects that Sam P. Raines disclosed little, if any, of the facts and circumstances surrounding his diversion of his corporation's property and opportunities. The most that was said was that the appellant insurance companies were displeased about the situation. When Sam P. Raines availed himself of the general agency contracts with the appellant insurance companies and the ''agency plants'' belonging to E. E. Raines Company in support of his own business enterprise, he necessarily usurped what belonged to E. E. Raines Company. Such a diversion by Sam P. Raines was wrongful and the appellees were entitled to relief.

The facts as set out herein likewise compel a conclusion that the conduct of James M. Coates, Sr., as a stranger to E. E. Raines Company falls below the standard required of him. The gravamen of the cause of action against him is to be found in his alleged acts of conspiracy with Sam P. Raines to divert the business of E. E. Raines Company and in his aid to and cooperation with Sam P. Raines in breaching his corporate fiduciary duties to E. E. Raines Company. He aided and cooperated with Sam P. Raines in usurping what belonged to E. E. Raines Company. Finally, he aided and cooperated with Sam P. Raines in acquiring the same property interests belonging to E. E. Raines Company for the benefit of a new partnership, Coates & Raines, created for the purpose of taking over these property interests. If his alleged acts of conspiracy and agency be disregarded, the other applicable principle imposes upon James M. Coates, Sr. liability equal with that of Sam P. Raines. This principle of law is that one who knowingly aids, encourages or cooperates with a fiduciary in the breach of his duty becomes equally liable with such fiduciary. *Jackson* v. *Smith,* 254 U. S. 586, 589, 41 S. Ct. 200, 65 L. Ed. 418; *Irving Trust Co.* v. *Deutsh,* 2d Cir., 73 F. 2d 121, 125; *Lonsdale* v. *Speyer,* 249 App. Div. 133, 291 N. Y. S. 495. James M. Coates, Sr., was the senior partner in Coates & Coates, a general insurance agency competing

with E. E. Raines Company. He was also a senior partner in its successor firm of Coates & Raines, a general insurance agency. As a competitor of E. E. Raines Company, James M. Coates, Sr. was legally entitled to use every reasonable means to secure additional business for his firm, including the acquisition of the general agency contracts that E. E. Raines Company had with the appellant insurance companies and the agents of E. E. Raines Company. But his acquisition of such interests for his business is prohibited by law when he acquires such interest by aiding and cooperating with Sam P. Raines, a known corporate fiduciary of E. E. Raines Company, in usurping what belonged to E. E. Raines Company for the benefit of their mutual business enterprise. He knew that Sam P. Raines was the manager, vice-president and a director of E. E. Raines Company, and he is charged with knowledge that Sam P. Raines occupied a fiduciary position to his corporation. He had been an employee of E. E. Raines Company; his mother had owned for many years as much as 35 per cent of the outstanding stock; his brother had been for many years a member of the board of directors; he attended the important June 4th meeting of the shareholders; he met with the representatives of the Commercial Union Group and the Great American Group in New York in early June, and he related to them an accurate account of the steps which had been taken by himself and Sam P. Raines for the acquisition of the general agency representations and the "agency plants" of E. E. Raines Company and its ultimate death. His new partnership was created on October 1, 1952, and he was in charge of the business on the partnership side while Sam P. Raines was concerned with transferring the business and property of E. E. Raines Company to the partnership. The evidence contained in the record makes it abundantly clear that James M. Coates, Sr. knowingly aided, encouraged and cooperated with Sam P. Raines in the usurpation of the general agency contracts and the "agency plants" belonging to E. E. Raines Company, and he is liable to the appellees for the resulting damages.

Appellants James M. Coates, Jr. and Gordon Y. Price were partners in Coates & Coates and in Coates & Raines, the successor of Coates & Coates. The record fails to disclose any evidence whatever that they aided, encouraged or cooperated with Sam P. Raines in the breach of his fiduciary duty to E. E. Raines Company or that they were principals with James M. Coates, Sr. in his assistance to Sam P. Raines in the usurpation of the property interest of E. E. Raines Company. Neither does the record disclose any evidence that they were advised of the wrongful conduct of James M. Coates, Sr. and Sam P. Raines. Certainly, under the circumstances existing here, it cannot be said that they ratified the wrongful acts of the senior partners James M. Coates, Sr. and Sam P. Raines whose acts took place primarily before the partnership of Coates and Raines was organized. It may be that they would be required to account for any profits accruing to them by reason of their membership in the firm of Coates & Raines. But since this is a derivative action brought by the stockholders of E. E. Raines Company to recover damages on behalf of their corporation for injuries sustained, and not for an accounting for profits received, neither James M. Coates, Jr. nor Gordon Y. Price is liable for the damages sustained by E. E. Raines Company.

Likewise, the Appellants, the Great American Group and the Commercial Union Group were not guilty of wrongful acts, and they are not liable for the damages sustained by E. E. Raines Company. These appellants had general agency contracts with E. E. Raines Company which contained clauses providing for a notice of intention to cancel. According to these clauses no reason was necessary for the cancellation of the contract. These appellants cancelled the general agency contracts according to the provisions contained therein. They gave no reason therefor. They were not required to give any.

Finally, Appellants Sam P. Raines and James M. Coates urge that the cause of action did not survive the dissolution of E. E. Raines Company which took place on February 7, 1956. But this issue is resolved in favor

of the appellees by Ark. Stats. (1947) Section 64-806 which provides that "All corporations . . . shall . . . be continued for the term of three years from such expiration or dissolution as bodies corporate for the purpose of prosecuting and defending suits by or against them and of enabling them gradually to settle and close their business, to dispose of and convey their property, and to divide their assets . . . ; provided, however, that with respect to any action, suit or proceeding begun or commenced by the corporation within three years after the date of such expiration or dissolution, such corporation shall only for the purpose of such action, suits or proceedings so begun or commenced be continued bodies corporate beyond said three-years period and until any judgments, orders, or decrees therein shall be fully executed." Here the corporation's Certificate of Dissolution was filed on February 7, 1956, and this action was instituted on October 14, 1953.

Further, Ark. Stats. (1947) Section 64-813 provides that if "any corporation becomes dissolved . . . before final judgment obtained in any action pending or commenced in any court of record of this State, against any such corporation, the said action shall not abate by reason thereof, but the dissolution of said corporation being suggested upon the record, the names of the trustees or receivers of said corporation . . . the said action shall proceed to final judgment . . ." It is clear from the foregoing statutes that the cause of action in question did survive the filing of the Certificate of Dissolution of E. E. Raines Company.

The evidence reflects that under ordinary circumstances a general insurance agency of the type of E. E. Raines Company can be sold for about one to one and one-half times its average net annual premiums over and above all other assets. In certain cases the sale price might go as high as two and one-half times such net annual premiums. In the instant case, E. E. Raines Company had a five year average net premium of $66,942.08 as received from business done for and through the appellant insurance companies; but its annual gross

volume of business was declining substantially from year to year. In view of the particular facts of the instant case, the Court concludes that the proper measure of damage is one times the average net annual premiums of the business done through the appellant insurance companies.

Accordingly, the decree of the Trial Court is affirmed as against Sam P. Raines and James M. Coates, Sr. to the extent of $66,942.08, and it is reversed as to all other appellants with directions to the Trial Court to dismiss the complaint as against them.

HARRIS, C. J., and HOLT and WARD, JJ., dissent as to any affirmance; they are of the opinion that no liability was established against any appellant.

ROBINSON, J., disqualified and not participating.