SCOTT-HUFF INSURANCE AGENCY *v.*
Timothy SANDUSKY d/b/a Sandusky Company

93-1219                                    887 S.W.2d 516

Supreme Court of Arkansas
Opinion delivered November 14, 1994

reversed and dismissed.

*Laser, Sharp, Mayes, Wilson, Bufford & Watts, P.A.*, by: *David M. Donovan* and *Dement, Vandivort & Dement*, by: *Kenneth L. Dement* and *Reid, Burge, Prevallet & Coleman*, by: *Donald E. Prevallet*, for appellant.

*Penix, Penix & Lusby*, by: *J. Robin Nix, III*, for appellee.

DAVID NEWBERN, Justice. Timothy Sandusky, the appellee, sued Scott-Huff Insurance Agency (the Agency), the appellant, for negligence alleged to have resulted in Mr. Sandusky not having insurance to cover injury to a crane Mr. Sandusky owned and operated. A judgment, based on a jury verdict, was entered in favor of Mr. Sandusky. We reverse and dismiss the case because Mr. Sandusky was charged with the duty to know the coverage of the insurance policy. The Trial Court should have granted the Agency's motion for a directed verdict.

The bank financing the purchase of the crane for Mr. San-

dusky required that it be insured. Mr. Sandusky called Charles Scott of the Agency. Mr. Scott had done insurance business with Mr. Sandusky's parents for seven or eight years but not with Mr. Sandusky. The testimony of Mr. Scott and that of Mr. Sandusky varied only a little as to what was said in their conversations, but the nub of their disagreement has more to do with what was understood by each of them.

Mr. Sandusky says he made it clear he wanted coverage for the operation of the crane. Mr. Scott says they discussed both an "all risks" policy which would cover operation of the crane and a more limited "named perils" policy. He said Mr. Sandusky's main concern was satisfying the bank's insurance requirement and paying a low premium which was to be financed by the Agency. Mr. Sandusky contends he did not vary from his desire to purchase insurance to cover his operation of the crane and he understood the difference between the two kinds of policies to be that the all risks version covered liability to third parties, which he did not want, and the named perils policy did not.

A named perils policy was issued and sent to Mr. Sandusky who acknowledges he received it and looked it over. Mr. Scott later called and gave an overview of the provisions of the policy.

Several months after the policy was issued, the crane was involved in an accident with overhead electrical wires. Although he did not submit a claim, Mr. Sandusky again discussed the policy coverage with Mr. Scott, and Mr. Scott mailed Mr. Sandusky a copy of the coverage portion of the policy with the coverage provisions highlighted.

The crane was then heavily damaged in an accident which occurred while it was being operated. Mr. Sandusky reported the loss to Mr. Scott who said to get an estimate of the damage and he would check the policy. The named perils policy did not cover the loss. Mr. Sandusky had an appraisal of the crane performed which cost $2,200.

There was some doubt evidenced in the record of trial, and there is some doubt in the briefs before us, whether we are dealing with an allegation of negligence in failure to advise or inform Mr. Sandusky of the terms of the policy or negligence in failure to supply the policy requested. The distinction is not important,

however, as in either event, the duty on the part of the policy holder to know its contents prevails in the circumstances of this case.

In *Stokes* v. *Harrell*, 289 Ark. 179, 711 S.W.2d 755 (1986), the dispute was over whether insurance should have covered cash value as opposed to replacement cost of items lost. The insured alleged the insurance agent had a duty, which she failed to perform, to inform them of the difference between the two coverages, and their acceptance of a policy providing for the lesser cash value coverage was the result. A directed verdict was entered in favor of the insurance agent.

We affirmed and held there was no merit to the claim that the agent had a duty to advise with respect to the different coverages. We adopted the rule announced in *Nowell* v. *Dawn-Leavitt Agency, Inc.*, 127 Ariz. 48, 617 P.2d 1164 (1980), to the effect that an insurance agent has no duty to advise the prospective insured, and we subscribed to the tendency of courts generally to "adhere to the long established rule placing a responsibility on the insured to 'educate himself concerning matters of insurance coverage.'" *See also Bruner* v. *League General Ins. Co.*, 416 N.W.2d 318 (Mich. App. 1987).

In *Howell* v. *Bullock*, 297 Ark. 552, 764 S.W.2d 422 (1989), the claim of the insured was for negligence on the part of the insurance agent in failing to obtain the coverage for the insured which had been requested. The insured, Mr. and Mrs. Bullock, purchased a policy covering their operation of a motorcycle, and they insisted they had ordered coverage for any injury to a passenger. The policy covered only injury to a passenger when the driver of the motorcycle was at fault. The ensuing accident injured Mrs. Bullock while Mr. Bullock was driving and she was a passenger. The insurance company denied coverage. No evidence of fault was produced by the insured. A judgment was awarded, based on a jury verdict, in favor of the insured. We reversed and dismissed the case.

After stating there was insufficient evidence on the issue of fault, we noted that the insured had received precisely the type policy for which they had applied in writing and they had not read the policy. Although we did not say it directly, the clear

implication of the opinion is a rejection of the possibility that the verdict could be upheld on the basis of the duty to procure a policy which would cover injury to a passenger regardless of fault. Citing *Stokes* v. *Harrell, supra,* we said, "It is the duty of a policy holder to educate himself concerning matters of insurance."

■ The Agency has also raised an issue with respect to instructions given to the jury. The judgment must be reversed and dismissed regardless of the instructions, so we do not address the point.

Reversed and dismissed.

GLAZE, J., not participating.