Lavern MANS *v.* PEOPLES BANK of IMBODEN

99-773                                    10 S.W.3d 885

Supreme Court of Arkansas
Opinion delivered March 2, 2000

*Walmsley & Weaver*, by: *Tim Weaver*, for appellant.

*Dick Jarboe*, for appellee.

ROBERT L. BROWN, Justice. The appellant, Lavern Mans, appeals the grant of a directed verdict in favor of the appellee, Peoples Bank of Imboden, on her negligence action. We hold that there was no legal duty established based on trust to support Mans's cause of action for negligence, and we affirm the grant of the directed verdict.

The facts are that on June 21, 1993, Lavern Mans and her husband, Jimmie Mans, executed a promissory note made payable to Peoples Bank in the amount of $25,949.55. The proceeds of the note were to be used for home improvements. At the same time, the Manses took out a joint credit life insurance policy on both of their lives to cover the amount due on the promissory note. Peoples Bank acted as the agent for the credit life company, American Pioneer Life Insurance Company, and were paid part of the premium for this service. The term of both the promissory note and the credit life policy was twenty-four months. The annual premium for the credit life policy was $1,054.55. The Manses agreed to finance payment of this premium in addition to the money borrowed under the promissory note based on a ten-year amortization

schedule. With the addition of the credit life premium, monthly payments on the promissory note were $351.70.

On June 21, 1995, the promissory note became due, and the Manses and the bank agreed to an extension of the note. The credit life insurance policy, however, lapsed at the end of the two-year term. After the note was extended by agreement, the monthly payments under the note remained the same.

On July 23, 1997, Jimmie Mans died, and Lavern Mans requested Peoples Bank to make a claim to the carrier under the credit life policy to pay off the home improvement loan. She was informed by Peoples Bank that the policy lapsed on June 21, 1995, and that American Pioneer Life would not pay her claim.

On July 2, 1998, Lavern Mans sued Peoples Bank for negligence in failing to notify her that the credit life policy had lapsed. Had she been notified, she alleged, the Manses would have extended the joint coverage on both of their lives. She prayed for judgment over against Peoples Bank for the amount due on the promissory note.

A jury trial ensued, and at the close of Lavern Mans's case, Peoples Bank moved for a directed verdict on the basis that the relationship between the bank and the Manses was one of debtor-creditor and that there had been no proof of a special relationship beyond that of debtor-creditor. Peoples Bank further argued, in the alternative, that there had been no proof that the bank did not tell her husband, Jimmie Mans, that the credit life policy had lapsed at the end of the two-year period.

Lavern Mans responded to the directed-verdict motion and argued that she and her husband continued to pay the same note payment after the note was extended on June 21, 1995. She argued that because of this, she assumed the credit life insurance had been extended, even though she knew the term of the policy was only for two years. Also, she claimed that no one at Peoples Bank advised her to the contrary, and she trusted the bank to tell her if there was a lapse.

The trial court found that there was no duty owed by the bank under a negligence theory to notify Lavern Mans that the credit life

policy had lapsed, and the court granted the motion for directed verdict in favor of Peoples Bank.

Lavern Mans's sole argument on appeal is that the trial court erred in finding that Peoples Bank had no legal duty to notify her that the credit life policy had expired. She first acknowledges in her brief that the issue of duty is always one for the trial court and never one for the jury, and, thus, is decided as a matter of law. She then goes forward, in seeming contradiction, and cites us to a court of appeals case, *Home Federal Sav. & Loan Ass'n v. Bass*, 1 Ark. App. 146, 613 S.W.2d 604 (1981), for the proposition that a jury may decide whether a duty exists. The crucial questions in our analysis, therefore, are (1) what duty did the bank owe to her based on the relationship that existed between the parties, and (2) did the trial court err in refusing to find a duty based on trust in this negligence claim?

According to Lavern Mans's complaint, her cause of action is solely one of negligence based on a failure to notify. During her direct examination at trial, however, this questioning took place:

> MR. WEAVER [*for Lavern Mans*]: Now, during this period of time that you had been with the bank for some twenty-three years, did you trust the bank?
>
> MANS: Yes
>
> WEAVER: And would you ...
>
> MANS: Completely.

At that point, counsel for Peoples Bank objected, resulting in the following sidebar conference between counsel and the trial court:

> BY MR. JARBOE [*for Peoples Bank*]: I'm going to object to this line of testimony because fiduciary relationship or confidential relationship was not pled and to establish anything other than just ordinary debtor-creditor relationship, those allegations have to be pled.
>
> BY MR. WEAVER [*for Lavern Mans*]: I don't have, I'm not claiming that there was a fiduciary relationship. I'm just claiming what the duty was and what the bank did or did not do because there's going to be testimony from Mr. Clark that he knows that

unsophisticated customers relied upon the bank. She's going to testify that she both trusted the bank and relied upon the bank.

BY MR. JARBOE: Still hadn't been pled, Judge.

BY THE COURT: Yeah, I agree. You're getting into something much further than negligence.

BY MR. WEAVER: But the, the negligence you have to prove a duty.

BY THE COURT: Yeah, but trusting?

BY MR. WEAVER: That's the duty. The bank, they get paid for it, Judge. The testimony's going to be that they got thirty to forty per cent of this woman's credit life premium and the bank had a duty, they were getting interest from this lady, they were getting thirty to forty per cent of her premium.

BY THE COURT: This is an arm's length transaction. This is not trusting and this and that and the other.

BY MR. WEAVER: Sure it is.

BY THE COURT: No, it isn't. I don't agree with that. If you, if you have to trust, you have a fiduciary relationship. Now you're close on the fact that he's an agent, but that doesn't have anything to do with the type of insurance so, no, I don't think this is correct.

BY MR. WEAVER: But I'm not, I'm not asking about, all I'm asking her is what her relationship had been with this bank. And that course, that course of relationship...

BY THE COURT: The relationship with that bank is an arm's length, debtor–creditor relationship.

BY MR. WEAVER: But it's going to be also what, it's going to be what it is if she testifies, "I always trusted the bank and relied upon the bank."

BY THE COURT: That's not fair to the bank.

BY MR. WEAVER: Well, I'm not...

BY THE COURT: You're on negligence. You're trying to have your cake and eat it, too.

By Mr. Weaver: But there has to be a duty and we have to establish what the duty is.

By the Court: The duty is not trust. The duty is what a ordinary, reasonable person would do under the circumstances. Not trust. You're throwing in your best ace which is your, which is your fact that she's a widow, but it doesn't have anything to do with fault or comparative fault in a negligence case. I agree with him on that.

By Mr. Weaver: But I, Judge, I think if they acknowledge that they know that these people rely on them, that puts them in that, that gives them the duty to at least have noticed her up.

By the Court: It's a debtor-creditor relationship, Tim. How do you have trust in — no, huh-uh, not under the law.

By Mr. Jarboe: I've got a case I'll show the Court.

By the Court: No, you don't need to show it.

By Mr. Weaver: Well, I'm going, I'm going to proffer that her testimony about this would be that she trusted this bank over a period of twenty three years, that she counted on the bank to do the right thing and that is tell her. The bank has testified via Preston Clark that, yes, these unsophisticated customers...

By the Court: There's your problem.

By Mr. Weaver: What's the problem?

By the Court: The law does not recognize sophisticated and unsophisticated in a debtor-creditor relationship on a note.

By Mr. Weaver: But it's a fact. This is just a fact.

By the Court: I've ruled, let's go. I'm not going to allow it.

We glean from this extended colloquy that counsel for Lavern Mans attempted to prove a legal duty of trust in a negligence case without first establishing a fiduciary relationship. In fact, counsel for Lavern Mans clearly stated that he was not claiming that a fiduciary relationship existed. Part of the problem in this case is an inherent conflict in Mans's position regarding the bank's legal duty. On the one hand, she does not claim that her relationship with the bank was fiduciary in nature. On the other hand, she contends that her

relationship was one of trust based on twenty-three years of business dealings.

■■ There are certain blackletter principles that bear mention in connection with Mans's argument. First, this court has recognized that a policyholder has a duty to educate herself concerning her insurance. *See Scott-Huff Ins. Agency v. Sandusky*, 318 Ark. 613, 887 S.W.2d 516 (1994); *Continental Cas. Co. v. Didier*, 301 Ark. 159, 783 S.W.2d 29 (1990); *Howell v. Bullock*, 297 Ark. 552, 764 S.W.2d 422 (1989); *Stokes v. Harrell*, 289 Ark. 179, 711 S.W.2d 755 (1986). In those cases where an established relationship between the insured and the insurance agent has developed over a period of time with the agent being actively involved in the insured's business affairs and in the maintenance of her insurance coverage, a special relationship may be found to exist. *See Stokes v. Harrell, supra.* In such cases, some jurisdictions have found that a duty to keep the insured informed exists on the part of the agent. *Id.* In *Stokes,* this court concluded that there was only minor contact between the insurance agent and the insured regarding the initial fire insurance on his business and when he increased the amount of insurance three years later. Under those circumstances, we held that the trial court was correct in granting a directed verdict in favor of the carrier.

■■ The question of the duty owed to the plaintiff alleging negligence is always one of law and never one for the jury. *D.B. Griffen Warehouse, Inc. v. Sanders*, 336 Ark. 456, 986 S.W.2d 836 (1999); *DeHart v. Wal-Mart Stores*, 328 Ark. 579, 946 S.W.2d 647 (1997); *Lawhon Farm Supply, Inc. v. Hayes*, 316 Ark. 69, 870 S.W.2d 729 (1994); *Catlett v. Stewart*, 304 Ark. 637, 804 S.W.2d 699 (1991); *Keck v. American Employment Agency, Inc.*, 279 Ark. 294, 652 S.W.2d 2 (1983). If the court finds that no duty of care is owed, the negligence count is decided as a matter of law. *D.B. Griffen Warehouse, Inc. v. Sanders, supra; Dunn v. Westbrook*, 334 Ark. 83, 971 S.W.2d 252 (1998); *Smith v. Hansen*, 323 Ark. 188, 914 S.W.2d 285 (1996). Duty is a concept which arises out of the recognition that relations between individuals may impose upon one a legal obligation for another. *Shannon v. Wilson*, 329 Ark. 143, 947 S.W.2d 349 (1997), *citing* W. PROSSER, *Handbook on the Law of Torts*, § 42 at 244 (1971).

■ For a fiduciary relationship to exist, this court has emphasized the necessity of factual underpinnings to establish a relationship of trust between a bank and its customers, which is more than a debtor-creditor relationship. *See Country Corner Food & Drug, Inc. v. First State Bank,* 332 Ark. 645, 966 S.W.2d 894 (1998); *Milam v. Bank of Cabot,* 327 Ark. 256, 937 S.W.2d 653 (1997); *J.W. Reynolds Lumber Co. v. Smackover State Bank* 310 Ark. 342, 836 S.W.2d 853 (1992). In *Country Corner Food & Drug, Inc.,* for example, we affirmed a summary judgment in favor of the bank on the basis that lack of sophistication of the customer and the bank's alleged advice not to seek independent counsel did not create a fiduciary relationship. In *J.W. Reynolds Lumber Co.,* we said:

> Here there were no facts to indicate that Reynolds and the Bank had any relationship beyond that of debtor/creditor. That being so, there was no fiduciary relationship and the chancellor did not err in dismissing the claim based on implied trust.

310 Ark. at 347, 836 S.W.2d at 855.

In assessing Lavern Mans's legal arguments, both before the trial court and on appeal, we conclude that the whole thrust of her case is that a relationship had developed with the bank beyond that of debtor-creditor and that she was entitled to rely on the bank to keep her informed. What she is claiming, without saying so, is that a special relationship had evolved leading to this reliance or trust that the bank would advise her on matters such as insurance lapses. Yet, she does not describe this relationship as one that was fiduciary in nature. She is content to argue that the bank owed her a legal duty based on her trust that the bank would tell her if her credit life insurance had lapsed. She admits that this is an issue of first impression for this court and then relies on the court of appeals decision, *Home Federal Sav. & Loan v. Bass, supra,* which concerned the failure of a savings and loan association to procure credit life insurance after the customers requested that it do so. Failure to procure insurance upon request is categorically different from what we have before us in the instant case.

■ We conclude that Lavern Mans is off the mark in arguing that the bank owed her a legal duty to keep her advised of insurance matters simply because she trusted the bank. Ordinarily, the relationship between a bank and its customer is one of debtor and creditor. *See J.W. Reynolds Lumber Co. v. Smackover State Bank,*

*supra.* And the duty owed for simple negligence is one of ordinary care. For the relationship to be more than one of debtor and creditor, factual underpinnings for that special relationship must be proved by the customer. *Id.* In the instant case, Mans makes no effort to prove a fiduciary relationship, and her counsel specifically stated to the trial court that he would not do so. Without any effort to establish such a relationship, which would justify a fiduciary duty, we are unable to agree that the trial court erred in determining that no legal duty based on her trust was owed by the bank.

▇▇ ▇▇ Even were we to treat Mans's argument as one of implied trust grounded on a fiduciary relationship or a special relationship based on course of dealing, her proof falls short of substantial evidence, which is necessary to ward off a directed verdict. *See Barnes, Quinn, Flake & Anderson v. Rankins,* 312 Ark. 240, 848 S.W.2d 924 (1993). Substantial evidence must be sufficient to compel a conclusion one way or the other and must go beyond suspicion or conjecture. *Id.* First, Lavern Mans's counsel sought to prove a trusting relationship merely by showing that his client was unsophisticated and had done business with the bank with her husband for twenty-three years. The trial court recognized that lack of sophistication does not equate to a fiduciary relationship, even if one had been asserted. *See Country Corner Food & Drug, Inc. v. First State Bank, supra.* Moreover, there was no proof that the bank, as insurance agent, was intimately involved in the Manses' business affairs so as to give rise to any obligation on the bank's part. *See Stokes v. Harrell, supra.* In fact, the proof showed to the contrary in that it was the Manses who decided when to take out credit life insurance. Sometimes they took out coverage on their loans and sometimes they did not. Because of their age, they decided to do so on the home improvement loan in question. But no proof was offered that this was at the bank's direction or based on the bank's advice.

The Peoples Bank's CEO, Preston Clark, did testify to an unwritten bank policy of informing customers when their credit life coverage expired. Yet, Lavern Mans did not testify that she knew about this policy. Thus, she could not have relied on it. She did testify that she knew the term of her credit life policy was only for two years. She simply assumed the coverage continued beyond that date because her note payment remained the same. She made this assumption even though she knew the credit life premium

payments were being amortized over ten years. Furthermore, she did not testify to any course of dealing with the bank where notice of insurance lapses was given to her or to her husband. It was made clear at the trial that Jimmie Mans took the lead in banking affairs for the family and had the bulk of the contacts with the bank. He was the one who went to the bank to extend the loan beyond June 21, 1995. We have no way of knowing what he knew about the status of the credit life policy after that date.

Our caselaw supports the notion that more must be shown to establish a fiduciary relationship and give rise to a fiduciary duty than was done in this case. *See County Corner Food & Drug, Inc. v. First State Bank, supra; Milam v. Bank of Cabot, supra; J.W. Reynolds Lumber Co. v. Smackover State Bank, supra.* Had this been a case where the bank had previously advised the Manses of when a credit life policy lapsed, or where the Manses were unaware of the duration of the policy's term and the amortization schedule for paying the policy's premium, or where the Manses were aware of the bank's policy to inform about lapses, this would be a different matter. *See Lowery v. Guaranty Bank & Trust Co.*, 592 S.2d 79 (Miss. 1991). But those facts are not before us.

In sum, this case seems analogous to the facts in *Country Corner Food & Drug, Inc. v. First State Bank, supra*, where we affirmed a summary judgment in favor of the bank even though the bank customer was unsophisticated and even though the bank, allegedly, had misled its customer about whether to seek independent advice. Here, the appellant would have us impose an obligation of implied trust based solely on a twenty-three year banking relationship and what she assumed, even though she knew the term of her credit life policy was only two years. This disregards our caselaw that an insured has some obligation to educate herself, if she had some question about the amount of the note payment and continuation of the insurance. Without substantial evidence that the banking relationship was fiduciary in nature or that the course of dealing warranted her repose of trust regarding notification, we are unable to conclude that the trial court erred in directing the verdict.

Affirmed.

GLAZE, J., dissents.

Tom Glaze, Justice, dissenting. I dissent. Arkansas law is clear that once one undertakes a duty, "even though gratuitously, [he] may thereby become subject to the duty of acting carefully, if he acts at all." *Haralson v. Jones Truck Lines*, 223 Ark. 813, 270 S.W.2d 892 (1954) (citing *Glanzer v. Shepard*, 233 N.Y. 236, 135 N.E. 275 (1922)).

In *Haralson*, a truck driver named Fulfer gave a truck traveling behind him a signal that it was safe to pass. The following truck, acting on Fulfer's signal, pulled out into the left-hand lane in order to pass, but in passing, ran over Carl Charles, who was walking down the left side of the road with his back to the trucks. The question presented was that of Fulfer's negligence in giving the signal. This court noted that, although Fulfer's truck did not itself come into contact with Charles, Fulfer signaled the trailing vehicle to pass him. It was the fact of that signal — even though Fulfer was under no legal duty to signal at all — that gave rise to Fulfer's duty to act with ordinary care. *Haralson*, 223 Ark. at 816-17, 270 S.W.2d at 894-95.

Although there remains a gulf between cases involving misfeasance and those in which the defendant is guilty of nonfeasance (or failing to act when one owes a duty to do so), Prosser and Keeton note that liability for nonfeasance has been increasingly recognized over the last century, finding such liability

> [i]n . . . relationships [in which] the plaintiff is typically in some respect particularly vulnerable and dependent upon the defendant who, correspondingly, holds considerable power over the plaintiff's welfare. In addition, such relations have often involved some existing or potential economic advantage to the defendant. Fairness in such cases thus may require the defendant to use his power to help the plaintiff, based upon the plaintiff's expectation of protection, which itself may be based upon the defendant's expectation of financial gain.

W. Page Keeton *et al.*, *Prosser and Keeton on the Law of Torts*, § 56, at 374 (5th ed. 1984).

In the instant case, the bank acted as an agent of the insurance company which offered the credit life policy, receiving thirty percent to forty percent of the premiums paid to American Pioneer Life. Although the bank would ordinarily owe no duty to its customers to inform that their insurance policies were about to lapse, it

nonetheless assumed such a duty when it adopted its policy of conveying such information to its customers. The establishment of this policy may have been a gratuitous assumption of a duty, but it was a duty nonetheless, and it carries with it the responsibility of acting with care.

In addition, the majority says that Ms. Mans's lack of knowledge of the bank's policy of informing customers prevents her reliance on that policy. However, her lack of knowledge is irrelevant. The plaintiff in *Haralson*, with his back to the traffic, was unaware that one truck driver had just signaled another that it was safe to pass, yet this court found a duty existed. Thus, in the circumstances now before us, it did not matter that Ms. Mans may have had no knowledge of the bank's policy.

Because I am of the opinion that the bank undertook a duty toward Ms. Mans, I would reverse the trial court's granting of a directed verdict and remand for a new trial.