**PETER GARRETT GUNSMITH, INC., Peter Garrett, President, Appellant,**

v.

**CITY OF DAYTON, Kentucky and City of Dayton, Board of Adjustments and Zoning Appeals,**

and

**City Of Bellevue, Kentucky and City of Bellevue, Board of Adjustments and Zoning Appeals, Appellees.**

No. 2001–CA–001311–MR.

Court of Appeals of Kentucky.

July 26, 2002.

Discretionary Review Denied March 12, 2003.

Bruce L. McClure, Erlanger, KY, for appellant.

Jeffrey C. Mando, Covington, KY, for appellees.

Before BUCKINGHAM, KNOPF, and SCHRODER, Judges.

## OPINION

BUCKINGHAM, Judge.

Peter Garrett Gunsmith, Inc., appeals from a judgment of the Campbell Circuit Court in favor of the City of Dayton, Kentucky, and the City of Bellevue, Kentucky. The circuit court found that KRS[1] 65.870 did not prohibit zoning ordinances in each city from restricting the locations in which a gun shop could operate. We conclude that the circuit court correctly awarded judgment in favor of the cities, and thus we affirm.

Peter Garrett is a gunsmith and a licensed firearms dealer. He is the owner and operator of Peter Garrett Gunsmith, Inc., a business located in Newport, Campbell County, Kentucky. Because the northern Kentucky area in which he conducts his business has flourished in recent years, Garrett sought to expand his business to locations in Bellevue and in Dayton.

In Bellevue, Garrett identified 225 Fairfield Avenue as the location of choice and, on August 22, 2000, he applied for an occupational license. This address fell within the portion of Bellevue zoned as "Neighborhood Commercial–Historical Preservation (NC–HP)." In Dayton, Garrett identified 638–640 Sixth Avenue as the location of choice and, on August 23, 2000, he applied for an occupational license. This address fell within the portion of Dayton zoned as "Central Business District (CBD)."

The zoning ordinances in each city prohibited Garrett from locating a gun shop at his chosen sites. Accordingly, the City of Bellevue denied his application for an occupational license on August 28, 2000, and the City of Dayton denied his application on September 1, 2000. However, Garrett was permitted to operate a gun shop business in other zones within each city. Bellevue allowed Garrett to operate in its "Mixed Land Use (MLU)" zone, and Dayton allowed Garrett to operate in its "Shopping Center (SC)" zone. However, Garrett deemed these locations undesirable. Therefore, he appealed the denial of his occupational licenses to the cities' zoning boards. In addition, he filed separate complaints in the Campbell Circuit Court claiming the zoning ordinances were invalid as being preempted by KRS 65.870.

The two circuit court cases were consolidated by agreement of the parties, and the issue was submitted to the circuit court on cross-motions for summary judgment. On May 23, 2001, the court entered summary judgment in favor of the cities. Specifically, the court found that KRS 65.870 did not restrict a municipality's ability to enact zoning ordinances which affect the location of the type of business operated by Garrett. This appeal by Garrett from that judgment followed.

Garrett's first argument is that the trial court erred in holding that KRS 65.870 does not preclude a municipality from en-

---

1. Kentucky Revised Statutes.

acting zoning ordinances controlling the location of the sale and transfer of firearms. Garrett asserts that the zoning ordinances of Bellevue and Dayton control the transfer and sale of firearms by dictating and controlling where these activities may take place. He further asserts that the intent of the legislature in passing the statute was to take complete control over "any part of the field" of gun control and that the statute should be liberally construed as required by KRS 446.080(1)[2] so as to carry out the legislature's intent. Although he acknowledges that the statute does not specifically reference regulation of the location of gun shop businesses such as his, Garrett contends that the legislature clearly intended to preclude municipality regulation of all facets of gun control, including regulation as to location.

The statute states that "[n]o city, county or urban-county government may occupy any part of the field of regulation of the transfer, ownership, possession, carrying or transportation of firearms, ammunition, or components of firearms or combination thereof." KRS 65.870. In granting judgment in favor of the cities, the trial court held that "[t]he plain meaning of the language of KRS 65.870 does not restrict a municipality's ability to enact zoning ordinances which affect the *location* of a business engaging in these activities." Noting that the zoning ordinances do not regulate any of the areas enumerated in the statute, the circuit court held that "one still has the right to convey firearms, own firearms, possess firearms, carry firearms and transport firearms in the Cities of Bellevue and Dayton." Further, the court stated that the regulation of location was conspicuously absent from the list of items a

municipality may not regulate in connection with the operation of a gun shop. The court also stated that it was apparent from the expressed language of the statute that the legislature did not intend to preclude cities from enacting zoning ordinances affecting the location of a gun shop. Also, the court held that if the legislature had intended the statute to preclude municipalities from enacting zoning ordinances affecting gun shops, it would have shown its intent by including a specific limitation of the municipalities' power in KRS Chapter 100.

■ Municipalities are "creatures of the law" and "possess only such powers as the state through its Legislature has expressly or impliedly conferred upon them." *City of Pineville v. Meeks*, 254 Ky. 167, 171, 71 S.W.2d 33 (1934). In 1980, the legislature delegated to cities all power necessary to effectively pursue a public purpose within its boundaries that is not in conflict with a statute or constitutional provision. KRS 82.082. *See also* Section 156b of the Kentucky Constitution. While zoning represents a public purpose (see *Fritts v. City of Ashland*, Ky., 348 S.W.2d 712, 714 (1961)), it is not necessary to cite KRS 82.082 to find a source for the power of cities to enact zoning regulations. Rather, the legislature made a specific grant of that power in KRS 100.201. Therefore, a city's power to enact zoning regulations is only limited to the extent legislation specifically prohibits it, to the extent it will conflict with a statute or constitutional provision, to the extent a comprehensive scheme of legislation on the same subject matter exists, or to the extent it is unreasonable, arbitrary, or oppressive. *See* KRS 82.082(2) and *Rottinghaus v. Board of*

2. KRS 446.080(1) states as follows:
 All statutes of this state shall be liberally construed with a view to promote their objects and carry out the intent of the legis-

lature, and the rule that statutes in derogation of the common law are to be strictly construed shall not apply to the statutes of this state.

*Commissioners of the City of Covington,* Ky.App., 603 S.W.2d 487, 489 (1979).

We now turn to rules of statutory construction so that we may determine whether the zoning ordinances in Bellevue and Dayton are invalid under KRS 65.870. "The construction and application of statutes is a matter of law and may be reviewed *de novo.*" *Bob Hook Chevrolet Isuzu, Inc. v. Transp. Cabinet,* Ky., 983 S.W.2d 488, 490 (1998). "The essence of statutory construction is to ascertain and give effect to the intent of the legislature." *Hale v. Combs,* Ky., 30 S.W.3d 146, 151 (2000). To ascertain the intent of the legislature, courts should view the statute as a whole, considering not only its language but also its spirit. *Combs v. Hubb Coal Corp.,* Ky., 934 S.W.2d 250, 252 (1996). However, the language in the statute bears the greatest importance, and a statute may not be interpreted in a manner that conflicts with the stated language. *Hoy v. Kentucky Industrial Revitalization Auth.,* Ky., 907 S.W.2d 766, 768 (1995), *citing Layne v. Newberg,* Ky., 841 S.W.2d 181, 183 (1992). Accordingly, a court may not insert language to arrive at a meaning different from that created by the stated language in a statute. *Beckham v. Bd. of Educ. of Jefferson County,* Ky., 873 S.W.2d 575, 577 (1994). Moreover, Kentucky statutes must be given a liberal construction, and the language used must be given its ordinary meaning except when the language used has a special meaning in the law; in such a case, the technical meaning is appropriate. KRS 446.080(1) and (4).

In accordance with the aforementioned principles of law, we conclude the trial court correctly ruled that the statute did not prohibit zoning regulations that affected gun shops. KRS 65.870 expressly prohibits a city's attempt to enter the field of regulation concerning the "transfer, ownership, possession, carrying or transportation of firearms, ammunition, or components of firearms or combination thereof." If a city regulation enters these fields, it is invalid since a city regulation that conflicts with a statute must yield to the statute. *Rottinghaus,* 603 S.W.2d at 489, *citing Reed v. Hostetler,* Ky., 245 S.W.2d 953 (1952). While the Bellevue and Dayton zoning ordinances regulate the locations where gun shop businesses may operate, they do not "occupy any part of the field of regulation of the transfer, ownership, possession, carrying or transportation of firearms, ammunition, or components of firearms or combinations thereof." KRS 65.870. These ordinances do not represent regulations in the field of firearm regulation prohibited by KRS 65.870. Rather, they represent regulations in the field of land use, a field of regulation that cities have authority to control. *See* KRS 100.201–.214 and KRS 82.082.

If the legislature had intended to prohibit all regulation affecting firearms and firearms dealers, including zoning regulations that affect location, it could have easily done so. It could have included location within the list of prohibited fields of regulation. Yet, Garrett suggests a reading of the statute that would extend its reach beyond its stated language and necessarily require the court to read into it language that was not chosen by the legislature. Such a reading would contravene the clear intent of the statute and, in effect, eviscerate a city's power to determine where gun shops best fit within its zoning scheme. Without the power to control the location of gun shops and firearm dealers, a city could find itself at the mercy of the firearms businesses that could begin operating wherever they choose, for example, in the heart of a community surrounded by single-family homes. In short, we con-

clude the trial court ruled correctly on this issue.

Garrett's second argument is that the zoning ordinances controlling the location of firearms sales are void as a matter of law and, therefore, inherently arbitrary, violating his due process rights. Thus, he claims a wrongful taking of his business and property under 42 U.S.C. 1983. The gist of this argument is that the ordinances are in direct conflict with KRS 65.870. Since we have determined that the ordinances are not in conflict with the statute, the argument is without merit.

The judgment of the Campbell Circuit Court is affirmed.

ALL CONCUR.