Steve BUELOW & Anderson–Frazier Insurance Agency, Inc. *v.* Kenneth MADLOCK

CA 04-898                                         206 S.W.3d 890

Court of Appeals of Arkansas
Opinion delivered April 13, 2005

*Wright, Berry, Hughes & Moore,* by: *Rodney P. Moore,* for appellant.

No response.

TERRY CRABTREE, Judge. After a bench trial, appellee Kenneth Madlock was granted judgment in the amount of $12,563.65 on his claim of negligence against appellants Steve Buelow and his insurance agency. Buelow raises three issues on appeal. He contends: (1) that the trial court erred in imposing a duty upon him to

review appellee's prior policies and inspect the premises before placing coverage; (2) that appellee's claims were barred by the statute of limitations; and (3) that the trial court's findings of negligence were clearly erroneous. We find merit in appellant's first issue and reverse and dismiss. Reversing on this point makes it unnecessary to decide the other issues.

Appellee is a businessman in Hope who owns a body shop, a Food Mart, and an upholstery shop. When the upholstery business was purchased in January 1998, appellee carried insurance on his businesses through the Green-Ellis Insurance Agency. The terms of the purchase agreement for the upholstery shop required appellee to insure the building under a standard fire and extended coverage policy. Green-Ellis provided coverage for appellee's businesses under a package policy specifically insuring the upholstery shop for $75,000 for a premium of $1,271. This policy was a "special form" policy which provided greater protection than standard extended coverage, as it covered the building from collapse due to snow and ice accumulation.

Appellee had previously purchased insurance through Buelow before moving his business to Green-Ellis. At the time the upholstery shop was purchased, Buelow still provided appellee's workers' compensation insurance. The parties are not in agreement as to who contacted whom, but in March 1998 coverage for the upholstery shop was transferred to Buelow. The policy that was issued provided standard fire and extended coverage, and the policy limit was reduced to $50,000 for a premium of $320. The policy was renewed in 1999 through March 2000.

On January 28, 2000, Hempstead County experienced a record snowfall with totals in the Hope area exceeding seventeen inches. The building that housed the upholstery shop collapsed under the weight of the snow and ice. Appellee obtained a rebuilding estimate in the amount of $22,843.60. Appellee made a claim under the policy with Buelow, but the claim was rejected because the policy specifically excluded coverage for losses occasioned by ice, snow, or sleet.

Appellee filed the instant lawsuit alleging that Buelow had been negligent because the policy did not provide coverage for the loss of the building due to snow and ice. Buelow filed a motion for summary judgment, which was denied by the trial court, and the case proceeded to trial.

Appellee testified that he let Buelow know that he owed $75,000 on the building and that he wanted "full coverage" for anything that could happen to the building. He acknowledged that he now knew that "full coverage" was not a term of art recognized in the insurance industry and that he did not know that it was necessary to make special provision for snow and ice. In his testimony, appellee admitted that he had never read the policy issued through Buelow. He also did not know what coverage was provided in the Green–Ellis policy because he had not read it either. He further understood that the policy issued through Buelow provided the coverage required under his purchase agreement, but he said that Buelow had not reviewed the contract. Appellee also testified that it was his decision to reduce the limit of liability to $50,000 and that it had been his aim to obtain a cheaper premium because he thought Green–Ellis's was too high. Appellee said that he had coverage for this loss with Green–Ellis but did not when he changed to Buelow and that "I basically put my trust that he would, you know, take care of my needs of what I needed to satisfy my lienholder."

Buelow testified that he moved to Hope in 1981 and had provided insurance to appellee off and on over the years as appellee would "leave to go to someone else, come back, you know that kind of thing." He said that he and appellee had only discussed fire and extended coverage for the upholstery shop, which included such things as windstorm, hail, vandalism and malicious mischief. He said that appellee had never requested special coverage. It was his opinion that the building would not have qualified for special coverage due to the nature of the building and its condition, but he admitted that he did not check to make sure that it would not qualify.

The trial court ruled from the bench after denying Buelow's motion for a directed verdict. The trial court found that appellee had been negligent by failing to compare his existing insurance coverage with the coverage provided by a policy with a much lower premium; by failing to provide Beulow with a copy of his existing policy; and by failing to read the policy purchased from Beulow. The court found that Buelow had been negligent by failing to review the existing coverage that appellee had on the structure and by failing to inspect the structure owned by appellee prior to recommending and selling a policy of insurance. The court apportioned the degree of negligence between the parties, finding that appellee had been forty-five percent negligent, while

Buelow was fifty-five percent negligent. Because the amount appellee was claiming was $22,843, the court entered judgment against Buelow for $12,563.65.

■ ■ Buelow first argues that the trial court erred in concluding that he owed appellee a duty to review appellee's policy with Green-Ellis or to inspect the building prior to recommending and selling the policy of insurance. Duty is a concept which arises out of the recognition that relations between individuals may impose upon one a legal obligation for another. *Mans v. Peoples Bank of Imboden,* 340 Ark. 518, 10 S.W.3d 885 (2000). In order to prove negligence, there must be a failure to exercise proper care in the performance of a legal duty that the defendant owed to the plaintiff under the circumstances surrounding them. *Costner v. Adams,* 82 Ark. App. 148, 121 S.W.3d 164 (2003). If the court finds that no duty of care is owed, the negligence count is dismissed as a matter of law. *Mans v. Peoples Bank of Imboden, supra.*

■■ Our supreme court has ruled that an insurance agent has no duty to advise or inform an insured as to insurance coverages; instead, our law places the responsibility on the policy holder to educate himself concerning matters of insurance. *Scott-Huff Ins. Agency v. Sandusky,* 318 Ark. 613, 887 S.W.2d 516 (1994); *Howell v. Bullock,* 297 Ark. 552, 764 S.W.2d 422 (1989); *Stokes v. Harrell,* 289 Ark. 179, 711 S.W.2d 755 (1986). The court adopted this position in *Stokes v. Harrell, supra,* and in doing so, it recognized an exception where there is a special relationship between the agent and the insured, as evidenced by an established and ongoing relationship over a period of time, with the agent being actively involved in the client's business affairs and regularly giving advice and assistance in maintaining proper coverage for the client. After examining the facts, the *Stokes* court concluded that there was no special relationship in that case where there had been no previous dealings between the agent and the insured and there was only minimal contact between them when application was made.

■ The trial court in this instance placed on Buelow the duty to investigate and ensure that appellee was properly covered. However, in Arkansas there is no duty to advise an insured as to differing coverages; therefore, it cannot be said that an agent has the correlative duty to investigate and ensure that the insured is

adequately covered, absent a special relationship. The question then becomes whether or not there is evidence of a special relationship in this case.

██ In *Sintros v. Hamon*, 810 A.2d 553 (N.H. 2002), the supreme court of New Hampshire addressed for the first time the question of what duty an insurance agent owes to an insured. The court recognized that courts in a majority of jurisdictions adhere to the rule that, absent a special relationship, an agent's duty does not include an affirmative, continuing obligation to inform an insured regarding the availability or sufficiency of insurance coverage. Like our supreme court, the court considered this rule to be sound, because to impose such a duty would convert agents into "risk managers with guarantor status" and "could afford insureds the opportunity to insure after the loss by merely asserting that they would have bought the additional coverage had it been offered," which "would amount to retroactive insurance, a concept that turns the entire theory of insurance on its ear." *Id.* at 556 (citations omitted). With regard to the proof required to show the existence of a special relationship, the court observed:

> An insured can demonstrate a special relationship by showing that there exists something more than the standard insurer-insured relationship. This depends upon the particular relationship between the parties and is determined on a case-by-case basis. Examples include express agreement, long established relationships of entrustment in which the agent clearly appreciates the duty of giving advice, additional compensation apart from premium payments, and the agent holding out as a highly-skilled expert coupled with reliance by the insured.

*Id.* at 556 (citations omitted).

██ The existence of a special relationship presents a question of fact. *Hardt v. Brink*, 192 F. Supp. 879 (W.D. Wash. 1961). In bench trials, the standard of review on appeal is whether the trial court's findings are clearly erroneous or clearly against the preponderance of the evidence. *Chavers v. EPSCO, Inc.*, 352 Ark. 65, 98 S.W.3d 520 (2003). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court is left with a firm conviction that a mistake has been made. *Id.* We believe that such a mistake was made in this case. The record shows that the parties had known each other as casual acquaintances for a

number of years and that they attended the same church. Buelow had provided various insurance policies for appellee off and on over the years but not on an exclusive basis. There is no evidence that Buelow was intimately involved in appellee's business affairs or that he regularly gave advice or assistance in maintaining proper coverage for appellee. The record does not show an express agreement or that Buelow was compensated to render such advice and assistance. Although appellee stressed at trial that Buelow carried the designation of "C.I.C.," which stood for Certified Insurance Counselor, Buelow explained that he obtained this certification only as a means of completing the educational requirements that were once necessary to retain an insurance license. Even if this could be considered some indication that Buelow held himself out to be a highly skilled expert, there is no evidence that appellee was even aware of this designation or that he relied upon it in any way. As we view the record, it reveals only the standard insurer-insured relationship, and the trial court's decision imposing a duty on Buelow is clearly against the preponderance of the evidence.

Reversed and dismissed.

HART and VAUGHT, JJ., agree.