Cite as 2020 Ark. App. 83

# ARKANSAS COURT OF APPEALS

DIVISION III

**No.** CV-19-338

| | |
|---|---|
| L. WALTER QUINN<br><br>APPELLANT<br><br>V.<br><br>RICHARD D. O'BRIEN AND SIMMONS BANK, IN ITS CAPACITY AS TRUSTEE OF THE HEARTLAND BANK LIQUIDATING TRUST U/I/D MARCH 8, 2018<br><br>APPELLEES | **Opinion Delivered:** February 5, 2020<br><br>APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, NINTH DIVISION<br>[NO. 60CV-17-6166]<br><br>HONORABLE MARY SPENCER MCGOWAN, JUDGE<br><br>AFFIRMED |

**PHILLIP T. WHITEAKER, Judge**

Appellant L. Walter Quinn filed suit in the Pulaski County Circuit Court against separate appellee Richard D. O'Brien and Heartland Bank[1] for breach of fiduciary duty, fraud, and negligence in connection with Quinn's business relationship with Heartland Bank and its parent company, Rock Bancshares, Inc. Both O'Brien and Heartland Bank subsequently moved to dismiss his complaint pursuant to Arkansas Rule of Civil Procedure

---

[1]In March 2018, the Arkansas Bank Commissioner accepted and endorsed a certificate of liquidation acknowledging the voluntary liquidation of Heartland Bank. Heartland Bank thereafter transferred its remaining assets to Simmons Bank, in its capacity as Trustee of the Heartland Bank Liquidating Trust U/I/D March 8, 2018, and surrendered its charter to the Arkansas State Bank Department. On April 11, 2018, the circuit court entered an order of substitution.

12(b)(6) for failing to state a claim and for failing to state facts upon which relief can be granted. The court granted the motions, and Quinn appeals.

## I. *Standard of Review*

In reviewing the circuit court's decision on a motion to dismiss under Arkansas Rule of Civil Procedure 12(b)(6) (2019), we treat the facts alleged in the complaint as true and view them in the light most favorable to the party who filed the complaint. *Travelers Cas. & Sur. Co. of Am. v. Ark. State Highway Comm'n*, 353 Ark. 721, 120 S.W.3d 50 (2003). In testing the sufficiency of the complaint on a motion to dismiss, we resolve all reasonable inferences in favor of the complaint, and the pleadings are liberally construed. *Id.* However, Arkansas is a fact–pleading state. According to Arkansas Rule of Civil Procedure 8(a)(1), a pleading that sets forth a claim for relief shall contain a statement in ordinary and concise language of facts showing that the pleader is entitled to relief. As a result, one seeking relief must state facts, not mere conclusions. *Id.*; *Rippee v. Walters*, 73 Ark. App. 111, 40 S.W.3d 823 (2001).

Further, Rule 12(b)(6) allows for the dismissal of a complaint for failure to state facts upon which relief can be granted. We must read Rules 8(a)(1) and 12(b)(6) together in testing the sufficiency of the complaint herein. *Hames v. Cravens*, 332 Ark. 437, 966 S.W.2d 244 (1998). We will look to the underlying facts supporting an alleged cause of action to determine whether the matter has been sufficiently pled. *Country Corner Food & Drug, Inc. v. First State Bank & Tr. Co.*, 332 Ark. 645, 966 S.W.2d 894 (1998).

2

## II. *Quinn's Complaint*

We now turn our focus to the facts as alleged in Quinn's third amended complaint. For purposes of our appellate review, we will treat the following facts as contained in his complaint as true.

Rock Bancshares, Inc., an Arkansas bank holding company, owns Heartland Bank. It is Quinn's relationship to these two entities and to appellee O'Brien that sets the stage for the issues raised herein.

At all times relevant to the lawsuit, Quinn was the majority stockholder of Rock Bancshares, served as its president and chief executive officer, and was its creditor as he owned approximately $3.2 million in capital notes issued by Rock Bancshares. Quinn also served on the board of directors of Rock Bancshares' subsidiary, Heartland Bank. In addition to his role on the Heartland Bank board of directors, Quinn was a customer of Heartland Bank due to the fact that he owed Heartland Bank approximately $5 million in loans.

Appellee O'Brien was also actively involved in both Rock Bancshares and Heartland Bank. He was an officer and director of Rock Bancshares; he was on the board of directors of Heartland Bank; and he served as Heartland Bank's president and chief executive officer. In these capacities, O'Brien obtained personal knowledge of Quinn's business dealings and financial status by accessing confidential credit information on Quinn and his various business enterprises. O'Brien was also aware that Quinn owed another bank—Prosperity Bank—approximately $5 million; that the Prosperity Bank loan had not been renewed at maturity; that Prosperity Bank had initiated legal action against Quinn; and that his stock in Rock Bancshares was pledged as collateral on the Prosperity Bank loan. With this

3

knowledge, O'Brien consulted legal counsel[2] and formulated a plan to acquire Quinn's stock in Rock Bancshares from one of Quinn's creditors.

In early 2015, the Federal Reserve Bank of St. Louis informed Heartland Bank that it had scheduled a bank examination for June. O'Brien, as an officer and director of Heartland, was aware of the Federal Reserve examination and was notified by the Federal Reserve Bank that Quinn would be required to pay off his $5 million loan obligation to Heartland Bank prior to the scheduled examination, even though Quinn had been performing on the loans as required and was not in default.

On March 31, 2015, Quinn converted the $3.2 million he held in Rock Bancshares capital notes into common stock. At the time of the conversion, Quinn was unaware that he would need to repay his $5 million loan to Heartland in June. At the time of the conversion, O'Brien knew that this conversion would impair Quinn's ability to pay off his loans with both Heartland Bank and Prosperity Bank but failed to disclose to Quinn that his note was scheduled to be called in June.

In June 2015, Quinn discovered he would be required to pay off his performing loans at Heartland Bank. He did so. However, due to the repayment of the Heartland Bank loan and the conversion of the Rock Bancshares capital notes to common stock, he lacked the financial resources to satisfy his outstanding loan obligations to Prosperity Bank. As a result, he was unable to satisfy the terms of his settlement agreement with Prosperity

---

[2]The complaint admitted that Quinn did not know the content of O'Brien's discussions with counsel, but Quinn was aware that he had been listed as the adverse party in the proposed retention letter.

4

Bank. O'Brien subsequently inquired whether he could personally purchase the Rock Bancshares stock Quinn had pledged as collateral for the Prosperity Bank loan while leaving in place the judgment, thereby further damaging Quinn's ability to meet the terms of the Prosperity Bank settlement agreement.

Upon completion of its examination of Heartland Bank, the Federal Reserve Bank prepared a confidential report. Sometime after the bank received the report of the exam, someone released the report to a third party. This confidential report was discussed in an article published in *Arkansas Business*, a weekly business journal. The article was critical of Quinn.

In December 2017, Quinn took a leave of absence from his positions as president and CEO of Rock Bancshares and from his board-of-directors positions with both Rock Bancshares and Heartland Bank. O'Brien was named acting president and CEO of Rock Bancshares upon his departure.

Based on the foregoing facts, Quinn asserted three causes of action: breach of a fiduciary duty, fraud, and negligence. Quinn claimed that Heartland Bank should be vicariously liable for O'Brien's actions because O'Brien was acting within the course and scope of his position as president and CEO of Heartland Bank and was acting to further Heartland's interest. We look at each of these causes of action in turn to determine whether the circuit court's decision to grant the motion to dismiss was appropriate.

III.  *Analysis*

A.  Breach of Fiduciary Duty

In his third amended complaint, Quinn sought relief under the theory of breach of fiduciary duty as a cause of action. Breach of fiduciary duty involves betrayal of a trust and benefit by a dominant party at the expense of one under his or her influence. *Cole v. Laws*, 349 Ark. 177, 76 S.W.3d 878, *cert. denied*, 537 U.S. 1003 (2002). A person standing in a fiduciary relationship with another is subject to liability to the other for harm resulting from a breach of the duty imposed by the relationship. *Long v. Lampton*, 324 Ark. 511, 922 S.W.2d 692 (1996). In assessing a cause of action for breach of fiduciary duty, we must determine first the existence of a fiduciary relationship and second what duty is owed; the issue of what duty is owed, if any, is always a question of law. *Id.*

Factually, Quinn alleged that he was a customer of Heartland Bank; the majority shareholder and an officer of Rock Bancshares; and a member of the board of directors of both Heartland Bank and Rock Bancshares. He further factually alleged that O'Brien was an officer and a board member of both Heartland Bank and Rock Bancshares and as such, owed a fiduciary duty to the organization's employees, the board of directors, and Rock Bancshares.  While not clearly set out in the complaint, we presume that Quinn was asserting that O'Brien owed a duty to him in his capacity as an officer and director of both Heartland and Rock Bancshares. Finally, Quinn claimed that O'Brien owed a fiduciary duty to him as a creditor of Rock Bancshares. We must now consider whether these alleged facts create a fiduciary relationship that would impose a resulting fiduciary duty.

6

Arkansas jurisprudence "imposes a high standard of conduct upon an officer or director of a corporation." *Raines v. Toney*, 228 Ark. 1170, 1178, 313 S.W.2d 802, 808 (1958). An officer or director of a corporation owes a fiduciary duty to the corporation and its shareholders. *See id.* In fact, a person who serves as both an officer and a director of a corporation bears an even greater duty. *See id.* Our legislature has codified a high standard of conduct owed by an officer to his corporation in the Arkansas Business Corporation Act:

> (a) An officer with discretionary authority shall discharge his duties under that authority:
>
> (1) in good faith;
>
> (2) with the care an ordinarily prudent person in a like position would exercise under similar circumstances; and
>
> (3) in a manner he reasonably believes to be in the best interests of the corporation.

Ark. Code Ann. § 4-27-842(a) (Repl. 2016); *see also* Ark. Code Ann. § 4-27-830(a) (establishing an identical standard of conduct for directors).

Here, Quinn alleges that O'Brien owed him a fiduciary duty to inform him of his need to pay his loans and that this fiduciary duty arose from Quinn's capacity as a shareholder, director, and creditor. The circuit court found that O'Brien, as an officer and a director of Heartland bank, owed no duty to Quinn to inform him that he would have to pay his loans prematurely. We agree.

Quinn has failed to properly plead facts of a breach of fiduciary duty based upon his status as a shareholder, officer, director, or creditor. Taking Quinn's allegations as true, he pled that he was a customer of Heartland. In his capacity as a customer, he was required to repay a loan, which resulted in a personal hardship in his other business dealings. O'Brien

7

had knowledge of the loan payoff and did not share this information with Quinn. From these facts, Quinn leaps to a conclusion that O'Brien was under a fiduciary duty to provide information to Quinn in his capacity as an officer, stockholder, or creditor regarding Quinn's financial condition as a customer. We disagree.

We have said that one who owes a fiduciary duty to a corporation may be subject to liability to the corporation for any harm resulting from a breach of his or her fiduciary duty. *See Long*, *supra*. Here, O'Brien had a fiduciary duty to both Heartland Bank and Rock Bancshares, but he had no fiduciary duty to Quinn as a customer. Clearly, Quinn claims that a fiduciary duty was breached because O'Brien failed to share information. But Quinn is seeking information that only benefits him personally and individually, not in his corporate capacity. In fact, in his complaint, Quinn asserts that O'Brien's "concealment" actually benefited the corporation. He claimed that O'Brien was acting to further Heartland Bank's interest because payment of Quinn's debt would improve Heartland Bank's financial condition and make it look better in the examination. As such, he technically benefited from the alleged "concealment" in his status as a shareholder rather than being injured by it. Moreover, conversion of the capital notes of Rock Bancshares strengthened the financial position of the parent company as well. Both these actions, therefore, benefited Quinn in his corporate status as a shareholder. The only damage was to Quinn's *personal* financial situation. Thus, Quinn failed to properly allege that O'Brien owed a duty to disclose in his capacity as a shareholder or that he breached that duty.

Quinn also claims that O'Brien—and vicariously Heartland Bank—owed him a fiduciary duty in his capacity as a customer of the bank. We disagree.

8

Ordinarily, a bank and its customer hold a relationship of debtor and creditor. *Mans v. Peoples Bank*, 340 Ark. 518, 10 S.W.3d 885 (2000). We will recognize fiduciary relationships between a bank and its customers only in limited situations. *Compare Knox v. Regions Bank*, 103 Ark. App. 99, 105, 286 S.W.3d 737, 741 (2008) (principal/agent relationship created fiduciary duty when bank was appointed as attorney-in-fact for customer in construction-loan contract for purposes of making payments); *with Farm Credit Midsouth, PCA v. Bollinger*, 2018 Ark. App. 224, 548 S.W.3d 164 (no showing that bank had been "intimately involved" with the customer's operations so as to elevate the relationship to a "special relationship" for which fiduciary duties are owed) *and Tech. Partners, Inc. v. Regions Bank*, 97 Ark. App. 229, 236, 245 S.W.3d 687, 693 (2006) (bank providing an account officer and a "sweep account" for deposits to corporate business customer and providing a "private banker" to the president of corporate business customer were not sufficient to create a confidential or special relationship giving rise to a fiduciary duty) *and Mans*, *supra*. (long-term, trusting relationship between a bank and an unsophisticated customer not sufficient to create fiduciary duty especially when there was no proof that the bank was intimately involved in the customer's business affairs). For a fiduciary relationship to exist, our supreme court has emphasized the necessity of factual underpinnings to establish a relationship of trust between a bank and its customers. *Mans*, 340 Ark. at 526, 10 S.W.3d at 889. In fact, a customer asserting a fiduciary relationship with his or her bank has the burden of proving the relationship is beyond that of debtor-creditor, and it takes more than a long-term relationship between the parties to meet this burden. *See Farm Credit Midsouth*, *supra*.

9

Viewing the facts in Quinn's complaint in the light most favorable to him, construing the pleading in a liberal fashion, and resolving all reasonable inferences in Quinn's favor, we conclude that the bank was not so intimately involved in Quinn's business as to create a fiduciary duty. While Quinn, by virtue of his various relationships with the bank, may owe a fiduciary duty to it, the converse is not necessarily true. Here, Heartland Bank was merely serving as a creditor. There is no evidence that it was so intimately involved in the making of his loans, as to create a fiduciary relationship. While Quinn may expect special treatment given his relationship with the bank, there is nothing alleged that would indicate that Heartland Bank was under a duty to give special treatment to Quinn that is not afforded to any other customer. In effect, Quinn is alleging that he was entitled to insider information for purposes of his personal banking business by virtue of his status as an officer, director, or shareholder. That is simply not the case. O'Brien did not have a duty to advance Quinn's personal business interests over the interests of Heartland Bank, Rock Bancshares, or its shareholders.

## B. Fraud

As for his fraud claim, Quinn alleged that O'Brien concealed from him a material fact—that his loans at Heartland Bank would need to be paid off prior to or during the June 2015 bank examination—knowing that this concealment would materially and adversely affect him. He claims that it was O'Brien's intent for Quinn to rely on this concealment so as to impair and harm Quinn financially and that he reasonably relied on the facts available to him when he converted his capital notes to common stock. He noted that he had both a personal and a business relationship with O'Brien and a business relationship with

Heartland Bank. If he had been aware that his note with Heartland Bank would be called, he would not have converted the notes. By converting the notes, he was prevented from satisfying both the Heartland Bank and the Prosperity Bank loan obligations; thus the concealment of this material fact adversely affected his financial condition. He further alleged that O'Brien orchestrated the plan to gain control of Quinn's stock in Rock Bancshares by withholding this material information from him and that his actions were willful and wrongful and ultimately led to Quinn's taking a leave of absence as an officer of Rock Bancshares and as a board member of Heartland Bank.

As noted by the court's order of dismissal, Quinn's fraud claims rest on O'Brien's duty to disclose the bank's premature calling of his note. As stated above, no duty to disclose existed. Thus, the court was correct in its determination that dismissal was warranted.

## C. Negligence

Finally, Quinn's negligence claims were based on the release of the confidential Federal Reserve Bank report. Quinn claimed that O'Brien, as president and officer and director of Heartland Bank, had an obligation and a duty to ensure that the bank complied with the federal regulations concerning the confidentiality of the report and that O'Brien and Heartland Bank were negligent in allowing the report to be released to a third party and in not having procedures or policies in place to prevent such a release. He claims that the release of the report led to criticism of him in an article published by *Arkansas Business* and that the criticism was unjustified because the report reached conclusions based on facts that were untrue. He further alleged that the report was being used against him in other

litigation. He alleged that the report's release had damaged his reputation and had severely affected his ability to work in the banking business.

Quinn's claim in this regard appears to be one for defamation, not negligence. In any event, in order to state a cause of action for negligence, Quinn must first allege that O'Brien and the bank owed *him* a duty to not disclose the results of the bank examination.

Title 12, section 261.20(g) of the Code of Federal Regulations provides:

> (g) Other disclosure prohibited. All confidential supervisory information or other information made available under this section shall remain the property of the Board. No supervised financial institution, financial institution supervisory agency, person, or any other party to whom the information is made available, or any other officer, director, employee or agent thereof, may disclose such information without the prior written permission of the Board's General Counsel except in published statistical material that does not disclose, either directly or when used in conjunction with publicly available information, the affairs of any individual, corporation, or other entity. No person obtaining access to confidential supervisory information pursuant to this section may make a personal copy of any such information; and no person may remove confidential supervisory information from the premises of the institution or agency in possession of such information except as permitted by specific language in this regulation or by the Board.

Under this regulation, the bank and its officers and directors clearly owed a duty to the Federal Reserve Board to keep the report and information contained therein confidential.[3] However, the regulation confers no similar duty on the bank to Quinn individually. Here, the circuit court found that the bank owed no duty to Quinn in connection with the release of the report and that Quinn had failed to state a cause of action. We find no error in this regard.

---

[3]The regulation specifically states that the information can only be published in statistical material so long as it does not disclose, either directly or when used in conjunction with publicly available information, the affairs of any individual, corporation, or other entity. However, the regulation does not specify any individual remedy for violation.

Affirmed.

GLADWIN and HARRISON, JJ., agree.

*Timothy Dudley*, for appellant.

*Wright, Lindsey & Jennings LLP*, by: *Edwin L. Lowther, Jr., Gary D. Marts, Jr.*, and *Adrienne L. Baker*, for appellee Rick O'Brien.

*Quattlebaum, Grooms & Tull PLLC*, by: *E.B. Chiles IV* and *Christopher Keller*, for appellee Simmons Bank, Trustee of Heartland Bank Liquidating Trust U/I/D March 8, 2018.