James A. KNOX and Holly Knox *v.* REGIONS BANK

CA 08-60                                      286 S.W.3d 737

Court of Appeals of Arkansas
Opinion delivered September 3, 2008

[Rehearing denied October 8, 2008.]

*Kilpatrick, Williams, Smith & Meeks, LLP*, by: *Joseph E. Kilpatrick, Jr.*, for appellants.

*Lightle, Raney, Bell & Simpson, LLP*, by: *Donald P. Raney*; and *Friday, Eldredge & Clark, LLP*, by: *Robert S. Shafer* and *William A. Waddell, Jr.*, for appellee.

DAVID M. GLOVER, Judge. Appellants James and Holly Knox appeal from a summary-judgment order that dismissed their claims against appellee Regions Bank for breach of fiduciary duty, breach of contract, and interference with contractual relations. Appellants contend that the circuit court erred in granting summary judgment because there are issues of material fact to be tried as to each claim. We affirm in part and reverse and remand in part.

*Factual Background*

On December 18, 2001, appellants contracted with Michael Stewart, d/b/a Stewart Construction, to build a home. The price was to be $120,000.[1] Appellants obtained a construction loan from Regions Bank up to the amount of $128,560. The construction-loan agreement, which is dated January 16, 2002, contained the following provisions relevant to this appeal:

> DISBURSEMENT OF LOAN FUNDS. The following provisions relate to the disbursement of funds from the Loan Fund.
>
>> Application for Advances. Application shall be stated on a standard AIA payment request form or other form approved by [Regions], executed by [appellants], and supported by such evidence as [Regions] shall reasonably require. [Appellants] shall apply for disbursement with respect to work actually done by [Stewart] and for materials and equipment actually incorporated into the Project. Each application for an Advance shall be deemed a certification of [appellants] that as of the date of such application, all representations contained in the Agreement are true and correct, and that [appellants are] in compliance with all of the provisions of this Agreement.
>>
>> Payments. At the sole option of [Regions], Advances may be paid in the joint names of [appellants] and [Stewart], subcontractor(s), or supplier(s) in payment of sums due under the Construction Contract. At its sole option, [Regions] may directly pay [Stewart] and any subcontractor(s) or other parties the sums due under the Construction Contract. [Appellants] appoint [Regions] as [their] attorney-in-fact to make such payments. This power shall be deemed coupled with an interest, shall be irrevocable, and shall survive an Event of Default under this Agreement.

Construction began shortly after the construction-loan agreement was signed. In May 2002, appellants received a telephone call from Chris Roberts, a Regions vice president, informing them that the loan was overdrawn by $10,615.16. Sometime thereafter, Stewart ceased work on the project.

---

[1] By separate contract executed on the same date, Stewart agreed to construct a shop for appellants for $11,600.

Appellants filed suit against Regions and Stewart, alleging that Regions breached the construction–loan agreement by disbursing funds directly to Stewart without a request for payment; that Regions assumed a fiduciary duty toward them and breached that duty by failing to complete the house after Stewart abandoned the project; and that Regions interfered with their contract with Stewart because Stewart ceased work after being informed by Regions that the loan was overdrawn and there would be no more money to proceed with construction.[2] Regions denied the material allegations of the complaint, as amended.

On January 29, 2004, Regions filed a counterclaim seeking foreclosure of its mortgage on the property. The circuit court granted summary judgment to Regions on its counterclaim and, on March 17, 2006, entered a foreclosure decree. The property was sold on April 4, 2006, and the court entered an order confirming the sale on that date. Appellants do not appeal from the foreclosure order or the order confirming the sale.

In addition, Regions also filed a motion for summary judgment on appellants' complaint, as amended. In its supporting brief, Regions asserted that it did not owe appellants any fiduciary duty because the relationship between it and appellants was merely a debtor–creditor relationship. Regions also argued that appellants' claim for breach of contract was not based on the construction-loan agreement provision regarding application for advances of funds but rather on the fact that Regions paid Stewart directly. Regions argued that the construction–loan agreement specifically gave it the right to do so and, as a result, Regions could not be in breach of the contract for paying Stewart directly. As to the tortious–interference claim, Regions argued that it was entitled to summary judgment because appellants realized that the loan from Regions would be insufficient to pay for both the land and the construction of the home.

Appellants responded by arguing that the provision regarding applications for advances must be read with the provision allowing Regions to make payments directly to Stewart. They also asserted that Regions assumed a fiduciary relationship by paying the money directly to Stewart.

---

[2] Appellants also amended their complaint to allege that Regions and Stewart conspired against them and that their conduct was outrageous, but they do not appeal the circuit court's dismissal of those claims.

On February 22, 2006, the circuit court issued a letter opinion in which it granted Regions's motion for summary judgment on appellants' amended complaint. The court found that there was no basis for the breach-of-fiduciary claim as there was no allegation that would create a fiduciary relationship beyond the construction-loan agreement. The court then addressed the breach-of-contract claim and found that there was no breach because Regions was allowed to pay Stewart directly. The court issued a second letter opinion clarifying its intention to grant summary judgment in favor of Regions on all of appellants' claims. The court's order granting summary judgment was entered on March 22, 2006. After this court dismissed appellants' attempted appeal, *see Knox v. Regions Bank*, No. CA 06-1198 (Ark. App. Sept. 12, 2007) (unpublished), the circuit court entered a final order that incorporated the prior letter opinions and order granting summary judgment. This appeal followed.

### Standard of Review

A motion for summary judgment should be granted when, in light of the pleading, and other documents before the circuit court, there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Ark. R. Civ. P. 56(c). When reviewing whether a motion for summary judgment should have been granted, this court determines whether the evidentiary items presented by the moving party in support of the motion left a material question of fact unanswered. *Bomar v. Moser*, 369 Ark. 123, 251 S.W.3d 234 (2007). The burden of sustaining a motion for summary judgment is always the responsibility of the moving party. *Id.* at 127, 251 S.W.3d at 239. All proof submitted must be viewed in a light most favorable to the party resisting the motion, and any doubts and inferences must be resolved against the moving party. *Id.*

### Arguments on Appeal

Appellants first argue that the circuit court erred in granting summary judgment on their breach-of-contract claim. The court ruled that Regions did not breach the contract because it had the contractual right to pay Stewart directly. We hold that the court erred in granting summary judgment.

Appellants' argument is not, as Regions argues, that Regions breached the construction-loan agreement by paying the funds directly to Stewart. Rather, the argument is that Regions breached

the contract by paying the funds without first requiring that appellants execute an application for the advance, resulting in appellants being unable to monitor the progress of the construction and in Stewart's being paid for more work than he performed. Regions did not address appellants' breach-of-contract claim at the hearing on the motion for summary judgment.

Regions's argument that it was entitled to summary judgment because the construction-loan agreement allowed it to pay Stewart directly is overbroad and ignores the provision requiring an application for the advance to be made by appellants. Regardless of whether Regions could pay Stewart directly, it still needed a request for an advance in order to know when to make the payments to Stewart. Once a request for an advance was made, Regions then had the discretion under the contract to make the payment directly to Stewart. It is a settled rule in the construction of contracts that the interpretation must be upon the entire instrument and not merely on disjointed or particular parts of it. *Byrne, Inc. v. Ivy*, 367 Ark. 451, 241 S.W.3d 229 (2006). The circuit court's conclusion that Regions was entitled to summary judgment on appellants' breach-of-contract claim ignored the provision regarding requesting advances.

Appellants offered proof to support their claim that Regions breached the contract by failing to require an application for advances to be made. Chris Roberts, Regions's vice president, testified in his deposition that there was no request by appellants to make disbursements from the loan funds. By example, copies of the disbursement checks indicate that, among them, Regions paid $5,533.89 on February 11, 2002, and $8,549.06 on February 25, 2002. Regarding these particular payments, Roberts testified that there was no request for either payment to be made but that there was an inspection sheet showing the work done to date. This testimony establishes that Regions disbursed money without a request from appellants and creates a factual issue that precludes entry of summary judgment in Regions's favor.

In their second point, appellants argue that the circuit court erred in granting summary judgment to Regions on their claim that Regions breached its fiduciary duty to them by making payments directly to Stewart. In response, Regions argues that there is nothing to show that a fiduciary relationship was created between it and appellants.

Ordinarily, the relationship between a bank and its customer is one of debtor and creditor. *Mans v. Peoples Bank*, 340 Ark. 518, 10 S.W.3d 885 (2000). For a fiduciary relationship to exist, our supreme court has emphasized the necessity of factual underpinnings to establish a relationship of trust between a bank and its customers. *Id.* at 526, 10 S.W.3d at 889. Regions argues that there is no provision or facts creating a fiduciary relationship between it and appellants. This argument is wrong. The construction-loan contract itself created a fiduciary relationship between Regions and appellants because the construction-loan agreement appointed Regions as appellants' attorney-in-fact with respect to Regions's making payments directly to Stewart. A person who holds power of attorney is an agent, and it has long been recognized that a fiduciary relationship exists between principal and agent in respect to matters within the scope of the agency. *Dent v. Wright*, 322 Ark. 256, 909 S.W.2d 302 (1995); *Yahraus v. Cont'l Oil Co.*, 218 Ark. 872, 239 S.W.2d 594 (1951). The circuit court erred in granting summary judgment because the agreement itself created that relationship.

For their third point, appellants assert that the circuit court erred in granting Regions summary judgment on their claim that Regions tortiously interfered with their contractual expectations that Stewart would construct their home.[3] We disagree. The elements of tortious interference have been well developed by the Arkansas Supreme Court and include: (1) the existence of a valid contractual relationship or a business expectancy; (2) the defendant's knowledge of the relationship or expectancy; (3) intentional interference by the defendant that induces or causes a breach or termination of the relationship or expectancy; (4) resultant damage to the party whose relationship or expectancy has been disrupted; (5) improper conduct on the part of the defendant. *Vowell v. Fairfield Bay Cmty. Club, Inc.*, 346 Ark. 270, 58 S.W.3d 324 (2001).

The summary-judgment proof on this issue shows that Michael Stewart learned that the loan was overdrawn in a May 2002 joint meeting with Chris Roberts and appellants. James Knox

---

[3] The circuit court did not specifically address the tortious-interference claim in its letter opinions, other than to announce its intention to grant summary judgment to Regions on all claims. In its order, the court stated that it was granting the motion on the tortious-interference claim "for the reasons argued by Regions in its motion for summary judgment and at the hearing."

testified that he and his wife knew that they would have to come up with approximately $20,000 to $22,000 to complete the project. Roberts testified that $32,000 of the funds from the construction loan was used to pay for the land. He denied that he told Stewart that there was no more money from the loan. He also testified that he and Stewart had a conversation after the May meeting where Stewart said that he underbid the contract. Stewart testified that he knew that appellants had other funds available to pay for the shop and that he worked on the project for another week or two until appellants told him that they would not pay any more money. He also denied telling appellants that he would not finish the project.

■ The circuit court properly granted summary judgment on this point because appellants failed to offer any proof that Stewart ceased work upon learning that there were no more loan funds available. Stewart testified that he stopped working only after appellants repudiated the contract by telling him that they would make no further payments. When a party to a contract has, either by words or conduct, definitely manifested an intention not to perform, the other party may treat the contract as ended. *Cox v. McLaughlin*, 315 Ark. 338, 867 S.W.2d 460 (1993). Here, Stewart testified that he continued to work until appellants told him there would be no more payments. Appellants offered no proof to the contrary. Therefore, summary judgment was proper because appellants cannot prove causation, an essential element of their claim. *See Allen v. Allison*, 356 Ark. 403, 155 S.W.3d 682 (2004).

Affirmed in part, reversed and remanded in part.

PITTMAN, C.J., and GLADWIN, J., agree.