
**NOT FOR PUBLICATION**

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP No. AZ-17-1310-SBaF |
| HARRY DELBERT DALTON, | Bk. No. 0:17-bk-06058-PS |
| Debtor. | |
| HARRY DELBERT DALTON, | |
| Appellant, | **MEMORANDUM**[*] |
| v. | |
| LAWRENCE J. WARFIELD, Chapter 7 Trustee, | |
| Appellee. | |

Argued and Submitted on June 21, 2018
at Phoenix, Arizona

Filed – July 11, 2018

---

[*] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

Appeal from the United States Bankruptcy Court
for the District of Arizona

Honorable Paul Sala, Bankruptcy Judge, Presiding

———

Appearances:    Appellant Harry Delbert Dalton argued pro se; Terry A. Dake argued for appellee.

———

Before: SPRAKER, BASON,[**] and FARIS, Bankruptcy Judges.

## INTRODUCTION

Chapter 7[1] debtor Harry Delbert Dalton appeals from an order authorizing the chapter 7 trustee to enter into a compromise under Rule 9019 to settle Dalton's prepetition claims against his former insurance agent, Wade Atchison, for payment of $5,000. At the time of his chapter 7 petition filing, Dalton's claims against Atchison already had been disposed of by summary judgment in favor of Atchison. Shortly after Dalton commenced his bankruptcy case, Dalton filed a notice of appeal from the summary judgment, but the notice of appeal was untimely, and the district court presiding over

---

[**] Hon. Neil W. Bason, United States Bankruptcy Judge for the Central District of California, sitting by designation.

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure. All "Appellate Rule" references are to the Federal Rules of Appellate Procedure.

Dalton's claims denied Dalton's motion for an extension of time to appeal.

Under these circumstances, we agree with the bankruptcy court that there were considerable obstacles to any recovery on the prepetition claims. In light of these considerations, the bankruptcy court did not err in concluding that the estate's creditors would be best served by approval of the compromise. Accordingly, we AFFIRM the bankruptcy court's order authorizing the compromise.

## FACTS[2]

### A. Dalton's Litigation Against Atchison.

In December 2015, Dalton filed, pro se, a verified civil complaint against Atchison and other unidentified defendants in the Mohave County Superior

---

[2] This recitation of facts is based, in part, on our review of court documents filed in Dalton's bankruptcy case and in his civil lawsuit against Atchison. Even though the parties did not include all of these documents in their excerpts of record, we can take judicial notice of the filing and contents of these documents. See Fed. R. Evid. 201; *Lee v. City of L.A.*, 250 F.3d 668, 690 (9th Cir. 2001); *Woods & Erickson, LLP v. Leonard (In re AVI, Inc.)*, 389 B.R. 721, 725 n.2 (9th Cir. BAP 2008). Additionally, Dalton has filed motions requesting that we permit him to supplement the record on appeal by taking into consideration all of the papers filed in his civil lawsuit and some of the papers filed in his appeal from the disposition of the civil lawsuit. These motions are hereby ORDERED GRANTED IN PART AND DENIED IN PART. To the extent we already have reviewed these papers for purposes of framing this recitation of facts, or to the extent the papers were presented to the bankruptcy court at or before the time of the bankruptcy court's ruling on the compromise motion, the motions are GRANTED. But, to the extent Dalton is asking us to consider papers not presented to the bankruptcy court for consideration, the motions are DENIED. *See Oyama v. Sheehan (In re Sheehan)*, 253 F.3d 507, 512 n.5 (9th Cir. 2001); *Kirschner v. Uniden Corp. of Am.*, 842 F.2d 1074, 1077–78 (9th Cir. 1988).

Court for breach of contract and intentional infliction of emotional distress.[3] Generally, Dalton alleged that in April 2013, Atchison, acting as his insurance agent, provided him with an insurance policy covering Dalton's residence then under construction in Arkansas. According to Dalton, he asked Atchison to obtain for him a "builders' risk policy" insuring all contractors and laborers working on the property, including himself, from accident and loss. Dalton claimed that the policy as originally written did not insure either him or any of his workers against bodily injury occurring while building the house. Dalton also claimed that Atchison persuaded him to change his insurance coverage in May 2013. As a result of this change, Dalton asserted, he and his workers were left uncovered for any injury occurring while working on the home construction.[4]

Apparently, sometime in May 2013, Dalton was injured while operating a bulldozer on the property. While recuperating from that injury, Dalton alleges that roughly $1,200 in wiring was stripped from the interior of the

---

[3] Dalton never amended his complaint to specifically identify any other defendants. Nor did he ever serve them. Consequently, the district court dismissed all other unnamed defendants from the action.

[4] The documentary evidence accompanying Atchison's court papers indicates that Allstate Insurance did not modify Dalton's insurance coverage until June 11, 2013. As Dalton has alleged, the accident and the theft from which his claims against Atchison arose both occurred before the end of May 2013. Consequently, the modification of the insurance coverage does not appear relevant to the merits of Dalton's claims against Atchison.

house and stolen. In December 2013, Dalton's insurer, Allstate Insurance, denied his claims resulting from both the bulldozer accident and the wiring theft. According to Dalton, his insurance claims were denied because Atchison sold him the wrong type of insurance or because Atchison wrongly advised him to change his insurance.

Dalton, then living in Arizona, sued Atchinson in the state court of Arizona. In his initial complaint, Dalton claimed, among other things, $54,000 in damages resulting from his eventual loss of his real property, as well as another $41,000 in unspecified bills he was unable to pay allegedly as a result of Atchison's conduct. In addition, Dalton claimed an unspecified amount of damages for pain and suffering and sought punitive damages. In his second amendment to the complaint, Dalton requested recovery of a drastically increased amount of damages, including but not limited to: (1) $247,000 for the loss of his home, his truck, and his tools; (2) $750,000 in medical costs; (3) $300,000 for damage to his credit rating; and (4) $750,000 in punitive damages.

Atchison removed the civil lawsuit to the United States District Court for the District of Arizona. The Arizona district court then ordered the case transferred to the United States District Court for the Eastern District of Arkansas, where Atchison resided. The Arkansas district court eventually disposed of the lawsuit based on Atchison's motion for summary judgment. Citing *Scott–Huff Insurance Agency v. Sandusky*, 887 S.W.2d 516 (Ark. 1994), and

*Buelow v. Madlock*, 206 S.W.3d 890, 893 (Ark. App. 2005), the district court ruled that: (1) absent a "special relationship," Atchison did not owe Dalton any duty, contractual or otherwise, to provide Dalton with adequate or correct advice or assistance in obtaining insurance for his coverage needs; and (2) under the undisputed facts as presented to the court, there was no special relationship between Dalton and Atchison from which a higher duty could have arisen.

As for the intentional infliction of emotional distress claim, the district court explained that Arkansas requires extreme and outrageous conduct going "beyond all possible bounds of decency" before an intentional infliction of emotional distress claim will arise. The court pointed out that Dalton had neither alleged nor set forth facts demonstrating this type of conduct on the part of Atchison.

The Arkansas district court entered judgment in favor of Atchison and against Dalton on May 15, 2017. Dalton mailed his notice of appeal to the Arkansas district court on June 14, 2017, but the district court did not receive and file it until June 19, 2017.

On June 30, 2017, Dalton filed a motion for leave to appeal in forma pauperis and a motion to extend the time to appeal, because he did not file his notice of appeal within thirty days of entry of the judgment. The district court denied both of these motions by order entered September 15, 2017.

**B. Dalton's Bankruptcy Case And Warfield's Compromise Motion.**

Meanwhile, on May 31, 2017, after the Arkansas district court entered judgment but before the 30-day appeal period ran, Dalton commenced his bankruptcy case in the United States Bankruptcy Court for the District of Arizona by filing a voluntary petition for relief under chapter 7 of the Code. Lawrence J. Warfield was appointed to serve as the chapter 7 trustee. Shortly after his appointment, Warfield sought and obtained the bankruptcy court's authorization to employ bankruptcy counsel, Terry Dake, to assist him in administering Dalton's bankruptcy estate.

Within days of his retention as bankruptcy counsel, Dake moved for court approval of a settlement Warfield had reached with Atchison. Pursuant to the settlement, Atchison agreed to pay the bankruptcy estate $5,000 to fully and finally resolve Dalton's claims against Atchison. Warfield asserted that, based on his review of the pleadings in the litigation and the Arkansas District Court's summary judgment ruling, the settlement was reasonable and in the best interests of the estate's creditors. As Warfield put it, there was no likelihood of success in the litigation, and the costs and uncertainties of continued litigation far exceeded any likely recovery therefrom. The compromise motion was less than three pages long and was not accompanied by any evidence.

In response, Dalton filed a variety of papers pertaining to his lawsuit against Atchison. On these papers, Dalton interlineated comments. The papers

and the interlineated comments comprise Dalton's opposition to Warfield's compromise motion. In large part, Dalton asserted that the compromise undervalued his claims and that approval of the compromise would violate his due process rights by not giving him a full and fair chance to litigate his claims. At the heart of Dalton's assertions was his contention that the Arkansas district court committed reversible error when it granted summary judgment in Atchison's favor. According to Dalton, the district court impermissibly accepted Atchison's asserted facts as true, ignored Dalton's asserted facts, and did not read the papers Dalton submitted in opposition to Atchison's summary judgment motion, as reflected by the numerous errors the district court supposedly made in reciting the basic chronology of events leading up to the dispute between Dalton and Atchison.

In support of his reversible error contention, Dalton presented an account of Atchison's alleged misconduct that differed from what he presented in his initial Complaint against Atchison. According to Dalton, Atchison said he was providing Dalton with builder's risk insurance but instead provided him with a homeowner's policy with a dwelling under construction endorsement. As explained by Atchison, the homeowner's policy covered persons injured on the property other than the insured.

As Dalton now puts it, Atchison had a duty to tell Dalton the true name of the policy, and if Dalton actually had received a copy of the policy stating that it was a homeowner's policy with a dwelling under construction

endorsement, he would have realized immediately that the policy Atchison procured did not meet his insurance needs with respect to the risk of bodily injury.[5] Citing *Lawrence v. Francis*, 267 S.W. 2d 306 (Ark. 1954), and *Derby v. Blankenship*, 230 S.W. 2d 481 (Ark. 1950), Dalton in effect asserts that Atchison agreed to provide him with insurance to cover his risk of bodily injury and that Atchison breached his contractual duty by not actually providing him with the requested insurance coverage. Dalton further asserts that the Arkansas district court erred because it ignored Atchison's breach of this contractual duty.

On October 12, 2017, the bankruptcy court held a hearing on the compromise motion. Warfield and Dalton reiterated their positions. The bankruptcy court largely agreed with Warfield. The bankruptcy court acknowledged that, in assessing the desirability of the compromise to the bankruptcy estate, the court needed to consider the factors set forth in *Martin v. Kane (In re A & C Properties)*, 784 F.2d 1377 (9th Cir. 1986). The court then addressed the first *A & C Properties* factor, the probability of success in the litigation. The court found, based on the papers submitted by both parties,

---

[5] Dalton also refined his argument regarding modification of the policy, now claiming that Atchison committed fraud against him by modifying and changing his policy without Dalton having signed an application requesting such a change. As explained in footnote 4 above, because Dalton's losses occurred in May 2013, and the policy was not modified until June 2013, the modification of the policy does not seem to have caused a change in coverage that would have affected Dalton's rights at the time the subject losses occurred.

that there was no likelihood of success in the appeal from the Arkansas district court's ruling and that Dalton could not prosecute the claims to successful resolution. In so finding, the bankruptcy court explained that the summary judgment ruling against Dalton as well as the denial of Dalton's motion to extend the time to appeal were "huge roadblocks" to the estate ever recovering any more for the claims than would be realized as a result of the proposed compromise. The court was also concerned that Dalton was the only person willing to prosecute the claims.

The bankruptcy court specifically mentioned the second and third *A & C Properties* factors, difficulty of collection and complexity of litigation. But the court did not say much about them. In essence, the court determined that these factors were eclipsed by the complete lack of likelihood of Dalton and the estate prevailing in the litigation.

As for the fourth and final *A & C Properties* factor, the paramount interest of the estate's creditors and deference to their reasonable views, the bankruptcy court found that their interest was best served by approving the settlement and thereby bringing into the estate the $5,000 settlement amount, which it concluded was as much as the creditors could expect to get from the litigation.

On October 13, 2017, the bankruptcy court entered its order approving the compromise. Dalton timely appealed the order.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(A) and (O). We have jurisdiction under 28 U.S.C. § 158.

## ISSUE

Did the bankruptcy court abuse its discretion when it approved the compromise of the appeal rights pursuant to Rule 9019?[6]

## STANDARD OF REVIEW

We review for an abuse of discretion the bankruptcy court's approval of the compromise. *Goodwin v. Mickey Thompson Entm't Grp., Inc. (In re Mickey Thompson Entm't Grp., Inc.)*, 292 B.R. 415, 420 (9th Cir. BAP 2003).

A bankruptcy court abuses its discretion if it applies an incorrect legal rule or if its factual findings are illogical, implausible or without support in the record. *United States v. Hinkson*, 585 F.3d 1247, 1261-62 (9th Cir. 2009) (en banc).

## DISCUSSION

Under Rule 9019, the bankruptcy court is authorized to approve a compromise of a dispute involving the bankruptcy estate. *In re Mickey Thompson Entm't Grp., Inc.*, 292 B.R. at 420 (citing *In re A & C Props.*, 784 F.2d at 1381). The compromise must be fair and equitable. *Id.* To determine the

---

[6] At the hearing on the compromise motion, Dalton orally requested that the bankruptcy court dismiss his bankruptcy case. The court orally denied that request. Nothing in Dalton's appeal papers suggests that he is challenging on appeal that denial. Therefore, we will not address it.

fairness and equity of the proposed compromise, the bankruptcy court is required to analyze the transaction with the following factors in mind:

> (a) The probability of success in the litigation; (b) the difficulties, if any to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; [and] (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premise.

*In re A & C Props.*, 784 F.2d at 1381.

Importantly, so long as the trustee and the bankruptcy court work within the confines of the above-referenced analytical framework, their informed decisions and judgment as to what sort of transaction was desirable and appropriate are entitled to deference and "great latitude." *Id.*

The bankruptcy court correctly identified all four *A & C Properties* factors. Furthermore, Dalton only has challenged on appeal the bankruptcy court's determination that there is little or no likelihood that Dalton would prevail on appeal or recover on his claims for the benefit of the estate an amount greater than what was realized as a result of the $5,000 settlement.[7] In support of his argument, Dalton reiterates the same points he raised in the

---

[7] Dalton has not challenged on appeal the bankruptcy court's analysis concerning the difficulty of collection, the complexity of the litigation and the paramount interest of the estate's creditors. For purposes of this appeal, it suffices for us to say that, if the bankruptcy court was correct about there being little or no chance of Dalton prevailing, then the court's determination that none of the other *A & C Properties* factors militated against the compromise was logical, plausible and supported by the record.

bankruptcy court regarding why he thinks the Arkansas district court's summary judgment ruling was wrong. He contends that the district court impermissibly accepted Atchison's asserted facts as true, ignored Dalton's asserted facts, and did not read all of the papers Dalton submitted in opposition to Atchison's summary judgment motion.

Importantly, however, Dalton does not address perhaps the biggest obstacle he would face in attempting to obtain reversal of the Arkansas district court's summary judgment. Dalton's notice of appeal was not filed within the 30-day time period required under Appellate Rule 4(a)(1)(A). Even though Dalton filed a motion to extend the time to file his notice of appeal, the Arkansas district court denied that motion, as well as his motion for leave to appeal in forma pauperis.

Simply put, Dalton's appeal of the district court's judgment is subject to dismissal by the Eighth Circuit Court of Appeals because the appeal was untimely filed. The 30-day appeal filing deadline is mandatory and jurisdictional. *See, e.g., Dieser v. Cont'l Cas. Co.*, 440 F.3d 920, 923 (8th Cir. 2006); *Arnold v. Wood*, 238 F.3d 992, 994–95 (8th Cir. 2001).[8]

---

[8] Because the 30-day appeal period is set forth in both the controlling statute, 28 U.S.C. § 2107(a), and in Appellate Rule 4(a)(1)(A), the recent Supreme Court case of *Hamer v. Neighborhood Housing Services of Chicago*, 138 S. Ct. 13 (2017), does not dictate a different result. *See Gordon v. James*, ___ F.3d ___, 2018 WL 2386818, at *1 (5th Cir. Mar. 27, 2018); *Evans v. Greentree Servicing, LLC*, 2018 WL 1326651, at *1 (unpublished order) (6th Cir. Feb. 8, 2018); *see also Wilkins v. Menchaca (In re Wilkins)*, ___ B.R. ___, 2018 WL 3197481 (9th Cir. BAP June 28, 2018 ) (post-*Hamer* decision holding that the time for filing an appeal from a
(continued...)

Thus, regardless of the merits of the issues Dalton seeks to raise before the Eighth Circuit, we agree with the bankruptcy court's determination concerning Dalton's chance of prevailing on appeal. Because his appeal of the district court's judgment was untimely filed, Dalton faced a very high hurdle.[9] In sum, the bankruptcy court's assessment of Dalton's probability of success was not clearly erroneous, and Dalton has not challenged on appeal any other aspect of the bankruptcy court's ruling approving the compromise.

## CONCLUSION

For the reasons set forth above, we AFFIRM the bankruptcy court's order approving the compromise of Dalton's appeal rights.

---

[8](...continued)
bankruptcy court order is mandatory and jurisdictional).

[9] Even though Dalton commenced his chapter 7 bankruptcy case before the appeal period expired, § 108(b) does not help Dalton. That Code section would have given his chapter 7 trustee an extra sixty days to file a notice of appeal, but the statute on its face does not apply to chapter 7 debtors. *See generally Santa Fe Dev. & Mortg. Corp. v. McCormack (In re Santa Fe Dev. & Mortg. Corp.)*, 16 B.R. 165, 167 (9th Cir. BAP 1981) ("The purpose of section 108 is to permit the trustee, when he steps into the shoes of the debtor an extension of time for filing an action or doing some other act that is required to preserve the debtor's rights."). Some courts have offered reasoned legal analyses for extending the application of § 108 to chapter 11 debtors in possession, *see id.* at n.1, and to chapter 13 debtors, *see Stephenson v. Chase Home Fin. LLC*, 2011 WL 2006117, at *5 (S.D. Cal. May 23, 2011). But we know of no legal or logical basis for extending § 108 to chapter 7 debtors. Nor has Dalton posited any.